Reuben E. Bates et al., Appellees, v. Charles B. Schuelke et al., Appellees, William J. Lindsay, Trustee-Purchaser, Appellant.

215 N. W. 2d 874

Filed March 21, 1974. No. 38977.

Robert G. Decker, for appellant.

Eugene T. Atkinson, for appellee Bates.

John E. Rice of Rice & Adams, for appellee Schuelke.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, Newton, and Clinton, JJ.

White, C. J.

In this mortgage foreclosure case the District Court, during term, set aside its previous order of confirmation and ordered a new sale. The purchaser Lindsay appeals, contending generally that the District Court abused its discretion in exercising its power to set aside its former judgment of confirmation and that the purchaser is entitled to confirmation. We affirm the order and judgment of the District Court.

An extensive review of the facts is necessary to put the issues in this case in proper perspective. It may be said at the outset that the difficulty involved in this case arises out of a situation in which the District Judge, Judge Schmidt, who handled the preliminary proceed-

ings in the mortgage foreclosure and entered the decree, became deceased and his successor, Judge Reagan, issued a subsequent order and confirmed the sale. The appeal involves three classes of parties: The mortgagee-plaintiff Bates who sought foreclosure; the mortgagor-defendant Schuelke; and the appellant-purchaser Lindsay at the judicial sale. The decree of foreclosure was entered by Judge Schmidt, since deceased. The execution sale of the real property pursuant to the decree of foreclosure took place after Schuelke took his statutory stay of execution. It was in the intervening period of time that District Judge Schmidt became deceased. After the term of stay had expired Bates filed a praecipe for judicial sale. An order of sale was then issued, notice of the execution was published, and the sale was held. Lindsay was the highest bidder for the real estate in the sum of $38,300. Until this time, the proceedings were governed by Judge Schmidt. Upon his death, Judge Reagan presided over the subsequent proceedings, which are at issue in this case.

A motion to confirm the sale was filed by Bates. The court, Judge Reagan presiding, confirmed the sale and ordered a sheriff's deed to be made out and delivered to Lindsay. The clerk of the District Court prepared and filed with the register of deeds a certificate of satisfaction of Bates' entire mortgage on the real estate. Through all these proceedings Schuelke represented himself.

Schuelke did not vacate approximately $3\frac{1}{4}$ acres out of a total of approximately $61\frac{1}{4}$ acres and Lindsay filed a motion for a writ of assistance. At the hearing on the motion for the writ of assistance, Schuelke filed a motion to set aside the sale and confirmation on the ground that only 58 acres were to be sold. Lindsay demurred. All these matters were taken under advisement after testimony was heard. The dispute centers around whether the total acreage, approximately $61\frac{1}{4}$

acres, was to be sold, or whether Schuelke's house and approximately 3¼ acres around it were to be excluded. The first mortgage on 58 acres of the property was held by Bates, with a second mortgage on 3¼ acres. The first mortgage on the 3¼ acres was held by the First National Bank of Bellevue.

The decree of foreclosure governs which property is to be sold at the execution sale, regardless of the description of the property in subsequent documents and notices. For this reason, the decree is extremely important, and will be summarized in pertinent part below.

The decree first states that Bates has a lien upon the total real estate described, the total 61¼ acres. The decree then provides that Bates' lien is superior to all except the first and prior lien of the defendant First National Bank of Bellevue upon a portion of the real estate, described as 3¼ acres.

The decree next provides that the sheriff shall sell "the real estate above described *subject* to the prior lien of defendant First National Bank of Bellevue upon a *portion* of said real estate as above described, and apply the proceeds, first, to the payment of the costs herein, second to the payment of the several liens of the plaintiffs, as above set forth, with interest thereon, bringing the surplus, if any, into Court to abide the further order of the Court in the premises * * *." (Emphasis supplied.) The decree then states that upon sale and confirmation all the defendants *except the First National Bank of Bellevue* are foreclosed of all rights in the real estate.

Note that no proceeds were to go to the First National Bank of Bellevue, and its interest in the property was not to be foreclosed. The notice of sale, order of sale, and confirmation describe 61¼ acres as being sold, with absolutely *no mention of the prior lien* of the bank. This apparently led to confusion.

At the hearing on the motion for a writ of assistance

and the motion to set aside the sale, the following important testimony was received. Schuelke testified that during the entire process he believed only 58 acres were being sold, and that the 3¼ acres around his house were not being sold. An attorney for a judgment creditor of Schuelke testified that he thought only 58 acres were being sold. Even Bates testified that he thought only 58 acres were being sold under the foreclosure. Bates' attorney, who drew up the decree, testified that he intended to foreclose on the entire 61¼ acres, and that his client, Bates, had never told him only to foreclose on 58 acres. Thus there was either a misunderstanding or a conflict *between Bates' testimony and that of his attorney.*

Judge Reagan, who confirmed the sale, made the following critical holdings on what occurred at the hearing of confirmation over which he presided, and upon what he as the judge understood. The judge said that counsel for Schuelke told him only 58 acres were sold and the deed would be for only 58 acres. It was the judge's clear understanding that only 58 acres were to be sold and the deed would so provide. A deed for 61¼ acres was given. The judge stated he would not have confirmed the sale if he had known that 61¼ acres were being sold. The judge determined that the confirmation was obtained through irregularity. He declared that the sale should be set aside because of this irregularity. He also found that the price was inadequate for the entire 61¼ acres.

Judge Reagan subsequently entered a memorandum and order denying Lindsay's motion for a writ of assistance, overruling the demurrer, and granting Schuelke's motion to set aside the sale and confirmation. The judge ordered that a new execution sale take place upon the entire 61¼ acres. Lindsay filed a motion for a new trial which was overruled. This appeal followed.

The facts that we have set out are self-explanatory

and reveal the confusion and uncertainty both among the parties themselves as to the amount of land that was sold, and the uncertainty and confusion of the trial judge candidly conceded in his findings. They arise from the lack of continuity of the same judge handling all the proceedings, an inaccurate notice of sale, and from the rather complex situation where property is sold on a portion of which there is a valid and unforeclosed first mortgage. It is settled law that the District Court has jurisdiction to set aside its own judgment during the term in which it is rendered if it believes that its former conclusion is erroneous. First Nat. Bank v. First Trust Co., 145 Neb. 147, 15 N. W. 2d 386. In First Nat. Bank v. First Trust Co., *supra*, it was clearly pointed out that this power to modify its own judgments at any time during the term in which they were pronounced is for the purpose of correcting errors or to relieve against fraud, accident, or mistake. It is also clear that this power may be exercised without regard to error, fraud, accident, or mistake in the absence of an abuse of discretion. First Nat. Bank v. First Trust Co., *supra*, and cases cited therein. Further, in State Life Ins. Co. v. Heffner, 131 Neb. 700, 269 N. W. 629, a mistake was made in an advertisement of land sold under a mortgage foreclosure. On the basis of this mistake a sale was had and the sale was confirmed. The District Court set aside the sale and confirmation during term. Our court affirmed. This case is very close if not directly on point with the present case. In this case the notice of sale, order of sale, and confirmation describe 61¼ acres as being sold, with absolutely no mention of the prior lien of the bank upon the 3¼ acres. The decree, which governs, specifically stated that "the real estate above described *subject* to the prior lien of defendant First National Bank of Bellevue upon a *portion* of said real estate as above described, * * *." (Emphasis supplied.) The conclusion is clear from the findings

of the trial judge and the testimony of the witnesses that this created confusion in the minds of the bidders as to exactly what portion of the real estate and what amount was going to be sold free and clear of encumbrance. The trial court so found and its judgment is supported by the evidence introduced in the case. Its judgment in setting aside the sale, restoring the status quo, and ordering a new sale was obviously not an abuse of discretion and is in the interest of justice to all parties concerned, especially in light of the fact that a court of equity traditionally jealously guards the equity of redemption.

The judgment of the District Court setting aside the sale and ordering a new one is correct and is affirmed.

AFFIRMED.

SMITH, J., not participating.

SPENCER, J., dissenting.

I respectfully dissent from the abortion of a judicial sale herein. On August 18, 1971, the court entered a decree of foreclosure concerning various and sundry mortgages and liens on the 61¼ acres involved herein. The court specifically found that the First National Bank of Bellevue, Bellevue, Nebraska, held a mortgage on the 3¼ acres which was a first and prior mortgage lien on the 3¼ acres and which was not being foreclosed therein. The court decreed that all the 61¼ acres be sold subject to the mortgage lien of the First National Bank of Bellevue on the 3¼ acres.

On September 21, 1971, the appellee, Charles B. Schuelke, who was living in a residence on the 3¼ acres, filed his request for a stay of execution. After the expiration of 9 months stay and on August 7, 1972, the sheriff sold the 61¼ acres at sheriff's sale to William J. Lindsay, trustee, for the sum of $38,300, which sum was paid to the sheriff. The sale was confirmed by the court, and the sheriff was directed to execute and deliver a deed to the premises subject to the first and

prior lien of the First National Bank of Bellevue.

Subsequent to the sale and before the proceedings herein, appellee Schuelke assigned a portion of the proceeds to another creditor and this creditor was ordered paid in accordance with terms of said assignment. On September 1, 1972, the clerk of the District Court, pursuant to statute, prepared and filed with the register of deeds a certificate of satisfaction of the mortgage of appellee Bates on the described 61¼ acres. Subsequently, appellee Schuelke refused to vacate the 61¼ acres and the appellant herein moved for a writ of assistance. While that motion was pending appellee Schuelke filed a motion to set aside the order of confirmation and to order that another sale be held. It was on this motion that the sale was vacated.

The evidence is uncontradicted that the deputy sheriff who conducted the sale at no time indicated less than 61¼ acres were being sold. The order of sale covered the 61¼ acres and the sheriff had no authority to offer less. I assume that confusion was caused by the fact that the bank had a first and prior mortgage on the 3¼ acres and that the property was being sold subject to this mortgage.

To permit loose talk or idle conversation to control an express order of sale is opening a Pandora's box. To permit the setting aside of a confirmed judicial sale in the absence of a clear and convincing finding of fraud will bring extreme uncertainty into an area where none now exists.

BOSLAUGH, J., dissenting in part.

The decree, order of sale, notice of sale, and the sheriff's return all indicate 61¼ acres was sold. Under these circumstances, and in the absence of evidence of inadequate consideration, it is difficult to justify an order setting aside the confirmation.

As a condition to the order granting the motion to vacate the confirmation, the defendant mortgagor was

required to deposit a sum of money with the clerk of the court. Pursuant to this order, the defendant's attorney deposited $42,130 on January 12, 1973. The order of distribution entered at the time of confirmation on August 17, 1972, found the plaintiff was entitled to $29,188.28. It would seem the proper remedy here would be to permit or require the mortgagor to redeem.