IN RE CONSERVATORSHIP OF KEITH J. MARSHALL,
A PROTECTED PERSON.
NEBRASKA HEALTH SYSTEM AND UNIVERSITY
MEDICAL ASSOCIATES, APPELLANTS, V.
JULIE E. BEAR, CONSERVATOR, APPELLEE.
634 N.W.2d 300

Filed October 9, 2001.   No. A-01-100.

Lawrence K. Sheehan and George T. Blazek, of Ellick, Jones, Buelt, Blazek & Longo, for appellants.

Julie E. Bear, pro se.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Nebraska Health System (NHS) and University Medical Associates (UMA) (collectively claimants) appeal from the order of the county court for Cass County, Nebraska, which denied their claim against the conservatorship of Keith J. Marshall, a minor, for the cost of medical services.

## FACTUAL BACKGROUND

On June 10, 1995, Keith injured his right hand in a hog roaster while attending an outdoor event in Mead, Nebraska. Keith was 3 years old at the time of the injury. He was treated at the University of Nebraska Medical Center from June 10 until June 19, 1995. The cost of hospital services totaled $10,702.91. UMA performed physician services for Keith at a cost of $4,230.30.

On November 15, 1995, Keith's parents filed for chapter 7 bankruptcy. Their debts to the University of Nebraska Medical Center and UMA were discharged on August 19, 1997. Keith's parents never made any payment on the hospital or physician bills.

## PROCEDURAL BACKGROUND

On May 20, 1997, Keith, by and through his parents, sued the city of Mead for his injuries. The parties settled in early 2000 for $125,000. On January 26, 2000, the county court for Cass County appointed Julie E. Bear as conservator of the settlement

funds. After attorney fees were paid, $81,450.81 remained in the conservatorship. The conservator filed an inventory with the county court on February 22.

On June 14, 2000, claimants filed a statement of claim against the conservatorship for $8,123.60. The conservator filed a disallowance of the claim on June 15. Claimants filed a petition for allowance of claim on June 19 and an amended statement of claim seeking $15,302.26 on June 30.

Claimants argued that under Neb. Rev. Stat. § 52-401 (Reissue 1998), a hospital lien in their favor attached to the $125,000 settlement upon Keith's admission to the hospital for treatment in 1995, and the lien survived Keith's parents' bankruptcy discharge. In addition, claimants asserted that under the law of "necessaries," Keith could be held to an implied contract for his medical care, despite his minority, because his parents were unable to pay. According to claimants, the 4-year statute of limitations on both the lien and implied contract began to run only when the conservatorship was funded with settlement proceeds. Claimants argue that they timely filed a claim under either of these theories.

The conservator's response requested that the court disallow the lien claim "based upon the fact that said claim is time-barred under the applicable statute of limitations." According to the conservator, Keith's liability could be based only upon quasi-contract or quantum meruit, and because the statute of limitations for these claims began running on June 29, 1995, the last date that medical services were provided, claimants' action was time barred as of June 29, 1999.

The county court denied claimants' claim, adopting the conservator's theory that the statutes of limitations for the lien and quasi-contract actions began to run on June 29, 1995. Finding that claimants had not filed their claim within the 4-year limitations period, the court found it unnecessary to decide whether Keith as a minor was actually liable in quasi-contract for the medical services.

## ASSIGNMENTS OF ERROR

On appeal, claimants assert that the county court erred in finding that their claims were time barred. Claimants argue only

that their claim under the hospital lien statute, § 52-401, was timely. And while claimants do not argue that Keith is personally liable in contract or quasi-contract, they imply in their argument that Keith is personally liable under the lien statute.

## STANDARD OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

## ANALYSIS

*Hospital Lien Statute.*

■ The hospital lien which claimants seek to enforce against Keith is created by § 52-401. The statute generally provides that when an injured person receives medical care and subsequently secures a judgment, settlement, or compromise for such injury, the physician, nurse, or hospital who provided the medical care has a lien against the settlement or judgment for "the amount due for the usual and customary charges of such physician, nurse, or hospital applicable at the times services are performed." We quote the key portion of § 52-401:

> In order to prosecute such lien, it shall be necessary for such physician, nurse, or hospital to serve a written notice upon the person or corporation from whom damages are claimed that such physician, nurse, or hospital claims a lien for such services and stating the amount due and the nature of such services, except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.

*Statutory Requirements for Perfection of Lien.*

■ The Nebraska Supreme Court has stated:

> "[A] lien created by statute is limited in operation and extent by the terms of the statute and can arise and be enforced only in the event and under the facts and conditions provided in the statute. It cannot be extended by the court to cases not within the statute."

*West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 285, 475 N.W.2d 901, 905 (1991), quoting *County Board of Platte County v. Breese*, 171 Neb. 37, 105 N.W.2d 478 (1960).

Section 52-401 provides without qualification that a party seeking to enforce the statutory hospital lien must first serve written notice upon the person from whom damages are claimed. The notice must state the amount due and the nature of the medical services performed. At the very least, "substantial compliance" with the notice requirements of § 52-401 is necessary to perfect a hospital lien. *West Neb. Gen. Hosp. v. Farmers Ins. Exch., supra.* The *West Neb. Gen. Hosp.* court also noted that the tort-feasor is generally the party against whom a medical provider must assert the lien provided for in § 52-401. While the statute does not specify when notice must be given, the Supreme Court made it very clear in *West Neb. Gen. Hosp.* that an attempt to perfect a § 52-401 hospital lien after the personal injury claim has been settled is untimely and renders the lien unenforceable.

Where a statute creating a lien provides no method for its enforcement, it may be enforced by an ordinary action at law for the collection of the debt. 53 C.J.S. *Liens* § 32 (1987). But when a statutory lien provides for a remedy, the remedy is regarded as exclusive and must be pursued. *Id.* A statutory lien can be enforced only under the facts and conditions provided in the statute. See *County Board of Platte County v. Breese, supra.* Here, § 52-401 contains the remedy for enforcement of the lien. In this case, claimants made no attempt to comply with the statute, giving no such notice at all. Instead, claimants waited until after Keith's action against the city of Mead was settled and then filed a claim against his conservatorship. There is no evidence that the two medical providers ever gave notice to the city of Mead, the tort-feasor, or filed a notice of their lien in the action by Keith against the city of Mead while it was pending. And, while *West Neb. Gen. Hosp. v. Farmers Ins. Exch., supra,* requires only "substantial compliance" with the lien perfection requirements of § 52-401, here there was no compliance whatsoever. Thus, the lien was never validly perfected and is unenforceable against the conservatorship.

*Enforcement Against Patient.*

Claimants suggest in their brief that they were not required to give notice of the lien because they are enforcing this lien against the patient, Keith. The analysis of the county court regarding the statute of limitations suggests that it may have decided the case

under such theory. Claimants' position relies upon the following language from *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 284, 475 N.W.2d 901, 905 (1991): *"The hospital's lien is enforceable as against the injured party upon attachment, regardless of whether the hospital complies with the statute's notice provisions.* Perfection, on the other hand, is required if the hospital seeks to enforce the lien against third parties, such as the tort-feasor." (Emphasis supplied.) (Emphasis in original.) (Emphasis omitted.)

■ We read the quoted and emphasized sentence from *West Neb. Gen. Hosp.* to mean only that the underlying common-law contractual obligation between a patient and a medical provider is not affected by a statutory lien. Given the clear language of the statute and the intent of the statutory scheme as outlined in *West Neb. Gen. Hosp.*—to protect payment for those who provide medical services to negligently injured persons by ensuring payment from tort-feasors—the quoted language can only be a reference to the patient's common-law liability to one who provides medical services to the patient. If a patient receives medical services, he or she is always responsible for payment irrespective of whether there is a financially responsible tort-feasor against whom a statutory lien can be asserted in the event of a settlement or judgment from a tort-feasor in the patient's favor. In short, the patient's personal liability for medical services remains intact irrespective of the lien statute. Other language in the *West Neb. Gen. Hosp.* opinion supports our reading of the passage upon which claimants rely: "[T]he statutory scheme [for medical provider liens] is similar to the well-known rule that the recording of a deed or mortgage is only relevant as against subsequent purchasers for value, but does not affect the validity of the transaction as between the parties themselves." *Id.* at 284, 475 N.W.2d at 905.

Keith could be held personally liable for the medical bills under some circumstances, despite his minority, if they were deemed "necessaries." See *Webster Street Partnership v. Sheridan*, 220 Neb. 9, 368 N.W.2d 439 (1985). However, the instant case brought by the claimants is not an in personam action against a minor for necessaries. In any event, such an action would now be barred by the statute of limitations, which

at the latest would have run 4 years from June 29, 1995, the last date upon which the claimants provided medical services to Keith. See Neb. Rev. Stat. § 25-206 (Reissue 1995). Thus, the finding by the county court that this action was barred by the statute of limitations was generally correct. As an action to enforce the statutory lien which has allegedly attached to the specific funds in Keith's conservatorship, it is an action in rem. The res at issue here is Keith's settlement with the city of Mead. We cannot simply treat the action as an enforcement suit "against" Keith, as claimants would have us do, when that is not what claimants alleged in their claim and to do so would substantially change the cause of action.

## CONCLUSION

Because claimants did not comply with the statutory requirements of § 52-401, their lien is not enforceable. While the county court should have first addressed whether the lien was enforceable, the court reached the correct decision in denying the claims of claimants against Keith's conservatorship. Finally, even if we could somehow view this action as a contract action against Keith for his common-law liability, the action was filed well after the applicable statute of limitations. That 4-year statute began to run no later than when the services were completed and the settlement with the city of Mead would be irrelevant to such a claim. An appellate court may affirm a trial court's decision on grounds other than those advanced by that trial court, if the result is correct. *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997).

AFFIRMED.