Twin Towers Condominium Association, Inc.,
a Nebraska nonprofit corporation, appellee
and cross-appellant, v. Bel Fury Investments
Group, L.L.C., a Nebraska limited liability
company, appellant and cross-appellee, and
Credit Bureau Services, Inc., a Nebraska
corporation, and Domina Law Group
PC, LLO, a Nebraska professional
corporation, appellees.

___ N.W.2d ___

Filed March 13, 2015.    No. S-13-1047.

1. **Actions: Foreclosure: Equity.** A real estate foreclosure action is an action in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.
3. ____: ____. On appeal from an equity action, when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.
4. **Statutes.** Statutory interpretation presents a question of law.
5. **Damages: Evidence.** Whether the evidence provides a basis for determining damages with reasonable certainty is a question of law.
6. **Appeal and Error.** An appellate court reviews questions of law independently of the trial court's decision.
7. **Foreclosure: Liens.** The purpose of a foreclosure proceeding is not to create a lien, but to enforce one already in existence.
8. **Statutes: Liens.** A lien created by statute is limited in operation and extent by the terms of the statute.
9. **Liens: Proof.** The party seeking to enforce a lien has the burden of proving every fact essential to the establishment of the lien.
10. **Courts: Assessments.** Courts enforce condominium assessments only if they are calculated in the manner required by the association's governing documents.
11. **Liens: Assessments.** A condominium association's temporary miscalculation of assessments does not invalidate its lien for unpaid assessments.
12. **Foreclosure: Liens: Judgments.** In general, the holder of a lien may pursue foreclosure without first obtaining a personal judgment on the underlying debt.
13. **Foreclosure: Final Orders.** A foreclosure decree is a final judgment even though it creates a period for redemption.
14. **Damages: Proof.** A plaintiff does not have to prove his or her damages beyond all reasonable doubt, but must prove them to a reasonable certainty.
15. **Attorney Fees: Costs.** Customarily, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits.

16. **Parties: Words and Phrases.** A party is a prevailing party if it receives a judg-
    ment in its favor.
17. **Acceleration Clauses: Equity.** An equity court may deny enforcement of an
    acceleration clause in a condominium association's governing documents when
    application of the clause would be inequitable.
18. **Foreclosure.** The necessary issues to be determined by a foreclosure decree are
    the execution of the agreement, the breach thereof, the identity of the real estate,
    and the amount remaining due.
19. **Judicial Sales: Foreclosure: Property.** A foreclosure decree governs which
    property is to be sold at an execution sale, regardless of the description in subse-
    quent documents and notices.

Appeal from the District Court for Douglas County: Joseph
S. Troia, Judge. Affirmed in part, and in part reversed and
remanded with directions.

Brian J. Muench for appellant.

Thomas J. Young for appellee Twin Towers Condominium
Association, Inc.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-
Lerman, and Cassel, JJ.

Connolly, J.

## I. SUMMARY

Bel Fury Investments Group, L.L.C. (Bel Fury), owns prop-
erty located in the Twin Towers Condominium in Omaha,
Nebraska. After Bel Fury failed to pay assessments for
this property (Unit SCB), the Twin Towers Condominium
Association, Inc. (the Association), recorded two notices of lien
and filed a foreclosure action. When the Association filed the
notices of lien and the complaint, it was levying assessments
against Unit SCB in a manner prohibited by the Association's
governing documents. The Association discovered the error
while the foreclosure action was pending and recalculated the
assessments. The district court found that the Association had
a lien against Unit SCB for delinquent assessments and stated
that the Association could foreclose its lien if Bel Fury did not
pay the back assessments within 90 days.

On appeal, Bel Fury argues that the Association does not
have a lien because it failed to levy assessments in the manner

required by its governing documents. On cross-appeal, the Association argues that the court did not award all the relief the Association is entitled to and failed to make all the findings necessary for a foreclosure decree.

We conclude that the Association's initial miscalculation of assessments did not invalidate its lien. We further conclude that the court erred by not awarding the Association attorney fees, not including several installments as part of the debt secured by the lien, and failing to include a legal description of Unit SCB in its decree.

## II. BACKGROUND

### 1. Factual Background

The Twin Towers Condominium was created by a master deed recorded on December 30, 1983. The "condominium regime" consisted of two 10-story towers: the "South Tower" and "North Tower." The master deed provides that the Association serves as "a vehicle for the management of the condominium." Each unit owner is automatically a member of the Association.

The master deed authorizes the Association to levy assessments against the units under terms set forth in the bylaws. Paragraph 12 of the bylaws provides:

Assessments against each apartment owner for such common expenses shall be made annually on or before the fiscal year end preceding the year for which assessments are made. The annual assessments shall be due in 12 equal, monthly payments on the first day of each month. The assessments to be levied against each apartment shall be such apartment's pro rata share of the total annual budget based upon the percentage share of the such apartment's basic value as set forth in the Master Deed . . . . Assessments delinquent more than 10 days after the due date shall bear interest at the highest legal contract rate from the due date until paid. The delinquency of one installment of an assessment shall cause all remaining installments to immediately become due, payable and delinquent.

The master deed states that Unit SCB represents 1.42 percent of the condominium's basic value.

Bel Fury is a business engaged in real estate sales and rentals. Bel Fury bought Unit SCB—windowless commercial space in the basement of the "South Tower"—in July 2004.

In February 2010, the Association hired a property management company to help manage the condominium regime. The company's owner, David Davis, testified that his company's responsibilities included collecting assessments for the Association and keeping records of payments made by unit owners.

Davis testified that when his company "came on board" in February 2010, the Association was levying assessments "based on a square footage amount." In October or November 2012, Davis discovered that the master deed required assessments to be calculated according to each unit's proportional share of the regime's basic value. Davis informed the Association, which "decided to go back to 2009 and make everything . . . pursuant to the Master Deed." Davis completed the corrections in January 2013.

Another concern for Bel Fury was the lack of heating and cooling in Unit SCB. Scott Bloemer, one of Bel Fury's owners, testified that Unit SCB did not have "heating and air conditioning" when Bel Fury bought the property. He stated that the Association did not fix the problem until July 2010. Davis testified that he became aware that Unit SCB lacked "heating and air conditioning" in March 2010. He said that the Association remedied the problem "sometime in 2010."

Bloemer testified that Bel Fury was unable to find a tenant for Unit SCB because of the lack of heating and cooling, the high assessments levied by the Association, and the stigma from the foreclosure litigation. Bloemer estimated that the annual rental income for Unit SCB "as it sat" "would be" $28,120 and stated that this amount was the lost rental income Bel Fury suffered each year from 2005 to 2012. Bloemer testified that Bel Fury could rent Unit SCB as storage space for $400 to $750 per month, then testified that it would rent for "like 50 cents to like a buck a square foot," and later testified that it would rent for $300 per month. Unit SCB has

7,030 square feet. Asked whether Bel Fury "actively marketed the property to sell," Bloemer testified, "I think we probably did at some point," but he could not recall when. Regarding Bel Fury's efforts to rent the property, Bloemer said, "I think the property was put out on the internet," but he could not recall when. Bloemer stated that Bel Fury did "not ma[k]e a lot of effort" to let Unit SCB after the foreclosure litigation began.

Bloemer testified that Bel Fury started paying only half its assessment for Unit SCB in February 2010 because he thought that "maybe somebody will do something [about the heating and cooling] if we cut our payments in half." Bloemer said that the Association stopped accepting the partial payments in October 2010.

The Association recorded two notices of lien against Unit SCB in October 2010. The most recent "Tenant Ledger" for Bel Fury is "current through the month of March, 2013." According to the ledger, Bel Fury owed $27,868.15 of unpaid annual and special assessments and $7,800.76 of late fees and interest.

## 2. Procedural Background

In December 2010, the Association filed a complaint to foreclose its lien against Unit SCB. The complaint alleged that Bel Fury owed assessments of $7,507 as of October 19, 2010, "together with accruing dues, special assessments and interest thereon from and after said date."

In addition to Bel Fury, the Association named Gateway Community Bank; Credit Bureau Services, Inc.; and Domina Law Group PC, LLO, as defendants. The Association alleged that these three defendants were actual or potential lienholders with interests junior to the Association's lien.

The complaint requested an accounting, a finding that the Association has a lien on Unit SCB, and an order that Bel Fury "be required to pay said indebtedness." The Association asked the court to issue an order of sale if Bel Fury did not pay the back assessments within 20 days of entry of the decree.

In Bel Fury's operative answer, it denied that it owed any assessments to the Association. Bel Fury also asserted a

counterclaim, alleging that the Association "failed to provide heating and air conditioning services" to Unit SCB "over the past five years." Bel Fury claimed that this failure made Unit SCB "unrentable and unusable" and "interfered with" its efforts to sell the unit. The counterclaim asserted damages of about $190,000 for lost rent and $9,000 for "[o]verpaid utilities." In the Association's reply, it generally denied the allegations in the counterclaim and alleged that Bel Fury had not suffered any damages.

As to the remaining defendants, Gateway Community Bank filed an answer stating that it was the beneficiary of a 2006 deed of trust and that its interest was a "first and superior lien." Domina Law Group answered, stating that it sought more than $130,000 from Bel Fury for professional services in pending litigation. Credit Bureau Services did not file a responsive pleading. In February 2012, the court sustained the Association's motion to dismiss Gateway Community Bank without prejudice.

In September 2013, the court entered a "Finding and Order." The court found that the Association had a lien against Unit SCB and that "judgment should be entered" for $26,467.44 against Bel Fury. The court stated that the Association could foreclose its lien if Bel Fury did not pay this amount within 90 days. Because the Association miscalculated assessments, the court concluded that the Association could not charge Bel Fury late fees or interest. The court "dismissed" Bel Fury's counterclaim because it "failed to prove damages." The court ordered the parties to bear their own attorney fees and costs associated with the action.

The Association moved for an order finding that Credit Bureau Services had defaulted and that Domina Law Group had no interest in Unit SCB. In November 2013, the court found that neither Credit Bureau Services nor Domina Law Group had a "lien interest" in Unit SCB.

### III. ASSIGNMENTS OF ERROR

Bel Fury assigns, consolidated and renumbered, that the court erred by finding that the Association may foreclose its lien if unpaid after 90 days because (1) the assessments

were levied on a square-foot basis and nonuniformly, (2) the Association did not provide Bel Fury with any notice regarding the lien foreclosure, (3) the Association had an adequate remedy at law, and (4) the provision that Bel Fury had 90 days to pay the debt made the order "not presently effective and . . . therefore void." Bel Fury also assigns that the court erred by (5) finding that Bel Fury failed to prove damages for its counterclaim and (6) not awarding Bel Fury attorney fees.

On cross-appeal, the Association assigns, consolidated and renumbered, that the court erred by (1) not awarding the Association attorney fees and costs, (2) not awarding interest on the past-due assessments, and (3) not awarding "assessments due from and after February 2013." The Association also assigns that (4) the court's decree was deficient because it did not state the legal description of Unit SCB, the priority of the liens, or that it would issue an order of sale if Bel Fury did not pay the debt within 90 days.

## IV. STANDARD OF REVIEW

[1-3] A real estate foreclosure action is an action in equity.[1] On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.[2] But when credible evidence is in conflict on material issues of fact, we consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[3]

[4-6] Statutory interpretation presents a question of law.[4] Whether the evidence provides a basis for determining damages with reasonable certainty is a question of law.[5] An appellate court reviews questions of law independently of the trial court's decision.[6]

---

[1] *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 352 N.W.2d 921 (1984).

[2] *Robertson v. Jacobs Cattle Co.*, 288 Neb. 846, 852 N.W.2d 325 (2014).

[3] See *id*.

[4] *Id*.

[5] See *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003).

[6] *Robertson v. Jacobs Cattle Co., supra* note 2.

## V. ANALYSIS

### 1. Statutory Background

Before analyzing the issues raised in Bel Fury's appeal, it is necessary to discuss the statutory background. Nebraska has two condominium acts: The Condominium Property Act (CPA), Neb. Rev. Stat. §§ 76-801 to 76-823 (Reissue 2009), and the Nebraska Condominium Act (NCA), Neb. Rev. Stat. §§ 76-825 to 76-894 (Reissue 2009). Generally, the CPA governs condominium regimes created before 1984.[7] The NCA applies to condominiums created on or after January 1, 1984.[8] A condominium regime is created under either the CPA or the NCA when the master deed or declaration, respectively, is recorded.[9]

Both acts provide that a condominium association has a lien for unpaid assessments. As to the CPA, § 76-817 states:

> The co-owners of the apartments are bound to pay pro rata . . . toward the expenses of administration and of maintenance and repair of the general common elements and, in the proper case, of the limited common elements, of the building, and toward any other expense lawfully agreed upon.
>
> If any co-owner fails or refuses to make any payment of such common expenses when due, the amount thereof shall constitute a lien on the interest of the co-owner in the property and, upon the recording thereof, shall be a lien in preference over all other liens and encumbrances except assessments, liens, and charges for taxes past due and unpaid on the apartment and duly recorded mortgage and lien instruments.
>
> No co-owner may exempt himself or herself from paying toward such expenses by waiver of the use or enjoyment of the common elements or by abandonment of the apartment belonging to him or her.

---

[7] See *Oak Hills Highlands Assn. v. LeVasseur*, 21 Neb. App. 889, 845 N.W.2d 590 (2014).

[8] See *id*.

[9] See §§ 76-803 and 76-838(a).

Section 76-874 describes the lien process under the NCA during the period relevant to this case:

> (a) The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due and a notice containing the dollar amount of such lien is recorded in the office where mortgages are recorded. The association's lien may be foreclosed in like manner as a mortgage on real estate but the association shall give reasonable notice of its action to all lienholders of the unit whose interest would be affected. Unless the declaration otherwise provides, fees, charges, late charges, fines, and interest . . . are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment may be a lien from the time the first installment thereof becomes due.
>
> (b) A lien under this section is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the declaration, (ii) a first mortgage or deed of trust on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) liens for real estate taxes and other governmental assessments or charges against the unit. . . .
>
> . . . .
>
> (e) This section does not prohibit actions to recover sums for which subsection (a) of this section creates a lien . . . .
>
> (f) A judgment or decree in any action brought under this section must include costs and reasonable attorney's fees for the prevailing party.

The Association recorded its master deed on December 30, 1983. But § 76-826(a) states that certain sections of the NCA, including § 76-874, apply to condominiums created before 1984 if the events in question occurred after January 1, 1984:

> The [NCA] shall apply to all condominiums created within this state after January 1, 1984. Sections 76-827, 76-829 to 76-831, 76-840, 76-841, 76-869, 76-874, 76-876,

76-884, and 76-891.01, and subdivisions (a)(1) to (a)(6) and (a)(11) to (a)(16) of section 76-860, to the extent necessary in construing any of those sections, apply to all condominiums created in this state before January 1, 1984; but those sections apply only with respect to events and circumstances occurring after January 1, 1984, and do not invalidate existing provisions of the master deed, bylaws, or plans of those condominiums.

The effect of § 76-826 is acknowledged in multiple sections of the CPA, including § 76-817.[10]

The Association's master deed adds another wrinkle. Paragraph 7(b) provides:

If any co-owner shall fail or refuse to make any payment of such assessments when due, the amount thereof plus interest shall constitute a lien upon the co-owner's interest in his apartment and in the property and, upon the recording of such lien by the Association . . . such amount shall constitute a lien prior and preferred over all other liens and encumbrances, except previous[ly] filed Association assessments, liens and charges for taxes past due and unpaid on the apartment except as otherwise provided for by law.

While § 76-826(a) requires that some sections of the NCA be applied to CPA-era condominium regimes, it cautions that the NCA does not invalidate the provisions of existing master deeds.

Neither the Association nor Bel Fury have labored over whether the validity of the Association's lien depends on § 76-817, § 76-874, or the master deed. Depending on the context, the Association cites both §§ 76-817 and 76-874, while also asserting that it "has a lien pursuant to the Master Deed."[11] Bel Fury has focused on the NCA under the assumption that the condominium regime was created in 2005—presumably because of the Association's references in its notices

---

[10] See §§ 76-802, 76-804, 76-807, 76-809, 76-811, 76-816, 76-817, 76-819, 76-820, and 76-823. See, also, Neb. Rev. Stat. § 76-824.01 (Reissue 2009).

[11] Brief for appellee Twin Towers at 12.

of lien and complaint to a phantom 2005 master deed. In its September 2013 order, the court found that the Association had a lien "pursuant to Neb. Rev. Stat. [§]§ 76-817 and 76-874."

We conclude that § 76-874 determines the validity of the Association's lien for unpaid assessments. Although the Twin Towers condominium regime was created before January 1, 1984, the events relevant to the Association's lien occurred after that date. Therefore, § 76-826(a) requires that we apply § 76-874 instead of § 76-817. This result does not "invalidate" paragraph 7(b) of the master deed.[12] Language in the master deed concerning the creation and enforcement of a lien was always gratuitous, because the "existence of a valid statutory lien rests entirely on whether the terms of the statute creating the lien have been met."[13]

## 2. Appeal

### (a) The Association Has a Valid Lien

Bel Fury argues that the Association's lien was "invalid and void ab initio" because the Association made assessments on a square-foot basis and because it nonuniformly assessed commercial and residential properties.[14] The Association "readily admits that assessments had been miscalculated for a period of time," but asserts that "this had been corrected months before trial."[15] The Association argues that at least by the time of

---

[12] See *Carroll v. Oak Hall Associates, L.P.*, 898 S.W.2d 603 (Mo. App. 1995).

[13] 51 Am. Jur. 2d *Liens* § 56 at 133-34 (2011). See, *BA Mortg. v. Quail Creek Condominium Ass'n*, 192 P.3d 447 (Colo. App. 2008); *Dime Sav. Bank of N.Y. v. Muranelli*, 39 Conn. App. 736, 667 A.2d 803 (1995); *Hudson House Condo. Ass'n v. Brooks*, 223 Conn. 610, 611 A.2d 862 (1992); *Brask v. Bank of St. Louis*, 533 S.W.2d 223 (Mo. App. 1975). See, also, *Spanish Court Two Condominium Ass'n v. Carlson*, 214 IL 115342, 12 N.E.3d 1, 382 Ill. Dec. 1 (2014); *Elbadramany v. Oceans Seven Condominium Ass'n*, 461 So. 2d 1001 (Fla. App. 1984). But see, *In re Eno*, 269 B.R. 319 (M.D. Pa. 2001); *Harbours Condominium Ass'n, Inc. v. Hudson*, 852 N.E.2d 985 (Ind. App. 2006).

[14] Brief for appellant at 6.

[15] Brief for appellee Twin Towers at 9.

trial, it sought only to enforce a lien for assessments made in conformance with its governing documents.

[7-9] The purpose of a foreclosure proceeding is not to create a lien, but to enforce one already in existence.[16] A lien created by statute is limited in operation and extent by the terms of the statute.[17] It can arise and be enforced only under the conditions provided in the statute.[18] The party seeking to enforce a lien has the burden of proving every fact essential to the establishment of the lien.[19]

[10] It is true that courts enforce condominium assessments only if they are calculated in the manner required by the association's governing documents.[20] But Bel Fury does not cite any authority stating that a lien for correctly calculated assessments cannot be enforced merely because the assessments were initially miscalculated. To the contrary, at least one court has held that an initial miscalculation is not fatal to a condominium association's foreclosure action. In *Oronoque Shores Condo. Ass'n v. Smulley*,[21] a condominium association admittedly levied a special assessment for snow removal to each owner equally, even though its bylaws required it to make assessments according to each unit's share of the common elements. After the association started foreclosure proceedings, it corrected the error and reapportioned the assessment.

---

[16] See, *West Town Homeowners Assn. v. Schneider*, 231 Neb. 100, 435 N.W.2d 645 (1989); *Federal Land Bank of Omaha v. Blankemeyer*, 228 Neb. 249, 422 N.W.2d 81 (1988).

[17] See, *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991); *County Board of Platte County v. Breese*, 171 Neb. 37, 105 N.W.2d 478 (1960); *In re Conservatorship of Marshall*, 10 Neb. App. 589, 634 N.W.2d 300 (2001).

[18] See *id*.

[19] 51 Am. Jur. 2d, *supra* note 13, § 89. See, also, *Walker Land & Cattle Co. v. Daub*, 223 Neb. 343, 389 N.W.2d 560 (1986).

[20] See, *In re Johnson*, 366 N.C. 252, 741 S.E.2d 308 (2012); *Zack v. 3000 East Avenue Condominium Ass'n*, 306 A.D.2d 846, 762 N.Y.S.2d 459 (2003).

[21] *Oronoque v. Shores Condo. Ass'n v. Smulley*, 114 Conn. App. 233, 968 A.2d 996 (2009).

On appeal, the unit owner argued that the assessment was void because it did not conform to the bylaws. She asserted that the subsequent correction did not make the assessment valid because such "new assessment" was not approved by the association's board.[22] The court concluded that the assessment was not void "merely because of the incorrect apportionment" because it was "forewarned, properly imposed and voted on by the board and within the association's authority to impose."[23] The court distinguished the "validity" of the assessment from its "apportionment":

> We must note that there is a difference between the validity of the snow assessment, that is, the power of the association to impose the assessment, and the manner in which it was apportioned. The apportioning of the snow assessment to each unit owner is a ministerial task, which does not affect the validity of the snow assessment itself.[24]

The court also noted that the defendant "acknowledged that the snow assessment was due and owing."[25]

[11] We conclude that the Association's temporary miscalculation of assessments does not invalidate its lien against Unit SCB. Because the bylaws require the Association to levy assessments according to each unit's share of the regime's basic value, the Association cannot enforce assessments made on the Unit SCB's square footage.[26] But here, the decree enforced assessments calculated according to Unit SCB's share of the regime's basic value. Bloemer testified that he did not think that Bel Fury had to pay assessments until the Association repaired Unit SCB's heating and cooling unit, but he otherwise did not dispute the amount of assessments as recalculated on a basic value basis. Withholding assessments is not a remedy

---

[22] *Id.* at 238, 968 A.2d at 999.

[23] *Id.* at 238-39, 968 A.2d at 999.

[24] *Id.* at 239, 968 A.2d at 1000.

[25] *Id.* at 240, 968 A.2d at 1000.

[26] See, *In re Johnson, supra* note 20; *Zack v. 3000 East Avenue Condominium Ass'n, supra* note 20.

to cure unauthorized acts by the officers or directors of a condominium association.[27] Accordingly, the court did not err by enforcing a lien for assessments calculated in a manner consistent with the Association's bylaws.

### (b) Notice

Bel Fury argues that the Association's lien is void because it did not give Bel Fury a "notice of default"[28] or "Notice to Cure."[29] In support, Bel Fury cites sections of the Nebraska Trust Deeds Act and the Farm Homestead Protection Act.[30] We determine that these sections have no bearing on the Association's action to foreclose a lien for unpaid condominium assessments. Section 76-874(a) requires notice to other lienholders, but is silent as to the unit owner. The Association's foreclosure action has entered its fifth year, and Bel Fury does not point to any notice deficiencies related to the litigation process. To the extent that Bel Fury argues that it did not receive notice of the sale of Unit SCB, we note that the sale has not yet occurred.

### (c) Adequate Remedy
### at Law

[12] Bel Fury argues that the Association could not foreclose its lien because it had an adequate remedy at law (i.e., money damages). We disagree. In general, the holder of a lien may pursue foreclosure without first obtaining a personal judgment on the underlying debt.[31] Section 76-874(a) provides that an assessment lien "may be foreclosed in like manner as a mortgage." We have held that a mortgagee may foreclose its lien without being forced to resort to other remedies.[32]

---

[27] *Coral Way Condo. v. 21/22 Condo. Assn.*, 66 So. 3d 1038 (Fla. App. 2011).

[28] Brief for appellant at 8.

[29] Reply brief for appellant at 6.

[30] See Neb. Rev. Stat. §§ 76-1008 and 76-1903 (Reissue 2009).

[31] 53 C.J.S. *Liens* § 56 (2005).

[32] *Federal Farm Mortgage Corporation v. Ganser*, 146 Neb. 635, 20 N.W.2d 689 (1945). See, also, *Federal Farm Mtg. Corporation v. Cramb*, 137 Neb. 553, 290 N.W.2d 440 (1940); 55 Am. Jur. 2d *Mortgages* § 452 (2009).

### (d) "Invalid" Judgment

[13] Bel Fury argues that the provision in the decree that Bel Fury had 90 days to pay the outstanding assessments before the Association could foreclose made the judgment "invalid because it is an order which is not presently effective." Again, we disagree. A foreclosure decree is a final judgment even though it creates a period for redemption.[33]

### (e) Proof of Damages

Bel Fury argues that the court erred by finding that Bel Fury "failed to prove damages" on its counterclaim. Bel Fury asserts that "unreasonably high dues" and the lack of heating and cooling "negatively affected both the re-sale value of the units and the rentability."[34] The Association emphasizes that Bel Fury could not find a tenant for Unit SCB either before or after the heating and cooling unit was repaired. The Association posits that Unit SCB's status as a windowless basement space "in all probability accounts for the lack of any tenants or prospective tenants."[35]

[14] A plaintiff does not have to prove his or her damages beyond all reasonable doubt, but must prove them to a reasonable certainty.[36] After reviewing the record, we conclude that the court did not err by finding that Bel Fury failed to prove damages to a reasonable certainty.

### (f) Attorney Fees

Bel Fury argues that the court abused its discretion by not awarding it attorney fees under § 76-891.01, which provides:

> If a declarant or any other person subject to the [NCA] fails to comply with any provision of the act or any provision of the declaration or bylaws, any person

---

[33] *Mortgage Lenders Network, USA v. Sensenich*, 177 Vt. 592, 873 A.2d 892 (2004); 55 Am. Jur. 2d, *supra* note 32, § 634. See, also, *West Town Homeowners Assn. v. Schneider, supra* note 16.

[34] Brief for appellant at 10.

[35] Brief for appellee Twin Towers at 16.

[36] See, *Dutton-Lainson Co. v. Continental Ins. Co.*, 279 Neb. 365, 778 N.W.2d 433 (2010); *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008).

or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award costs and reasonable attorney's fees.

Section 76-891.01 is part of the NCA, but it is among the sections that § 76-826 makes applicable to CPA-era condominiums.

[15] We determine that Bel Fury is not entitled to attorney fees. Customarily, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits.[37] Bel Fury did not prevail, and the Association's suit was not frivolous.

### 3. CROSS-APPEAL

#### (a) Attorney Fees and Costs

[16] The Association argues that it is entitled to attorney fees and costs. We agree. Section 76-874(f) provides: "A judgment or decree in any action brought under this section must include costs and reasonable attorney's fees for the prevailing party." The Association was a prevailing party because it received a judgment in its favor.[38] The court had discretion as to the amount,[39] but the award of attorney fees and costs is mandatory.[40]

#### (b) Interest

The Association argues that it is entitled to interest on past-due assessments. On our de novo review, we conclude that the court did not err by declining to award interest, because the Association miscalculated assessments for a substantial period.

#### (c) Assessments Due
#### After January 2013

The Association argues that the court erred by not including in the debt secured by its lien the assessments that became

---

[37] *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999); *Brodersen v. Traders Ins. Co.*, 246 Neb. 688, 523 N.W.2d 24 (1994).

[38] 20 C.J.S. *Costs* § 139 (2007).

[39] See, e.g., *Brodersen v. Traders Ins. Co., supra* note 37.

[40] See *Stage Neck Owners Ass'n v. Poboisk*, 726 A.2d 1261 (Me. 1999).

delinquent after January 2013. In its decree, the court found that the debt secured by the Association's lien is $26,467.44, which is the amount of unpaid assessments in Davis' tenant ledger through January 1, 2013. Under an acceleration clause in the bylaws, the Association argues that all the monthly assessments became due upon the delinquency of one installment. "At the very least," the Association contends, "the trial court should have awarded ongoing and unpaid assessments up to the point of any payment by Bel Fury or sale of the property pursuant to an order of sale."[41]

The amount of the debt is an essential part of a foreclosure decree.[42] The court may include an installment of the debt that was not due when the complaint was filed but became due during the pendency of litigation.[43] But the court cannot include an installment that has yet to become due, because doing so would prevent a redemption.[44]

[17] We have said that an acceleration clause in a mortgage is enforceable,[45] although an equity court may deny enforcement when application of the clause would be inequitable.[46] Paragraph 12 of the bylaws provides: "The delinquency of one installment of an assessment shall cause all remaining installments to immediately become due, payable and delinquent."

On our de novo review, we conclude that enforcement of the acceleration clause in paragraph 12 of the bylaws would be inequitable. The Association miscalculated—substantially—the amount of assessments, starting well before it filed the notices of lien and continuing for 2 years after it started foreclosure proceedings. But we conclude that the debt secured by the Association's lien includes the assessments for the months of

---

[41] Brief for appellee Twin Towers on cross-appeal at 29-30.

[42] See, e.g., *Glissman v. Orchard*, 152 Neb. 500, 41 N.W.2d 756 (1950).

[43] See 5 Herbert Thorndike Tiffany, The Law of Real Property § 1523 (3d ed. 1939).

[44] *Id*.

[45] See *Jones v. Burr*, 223 Neb. 291, 389 N.W.2d 289 (1986).

[46] *Walker Land & Cattle Co. v. Daub, supra* note 19.

February and March 2013. On March 26, 2013, Davis testified that Bel Fury had not paid assessments for Unit SCB since September 2010. Paragraph 12 of the bylaws states that assessments are due on the first of each month and delinquent if not paid within 10 days. Accordingly, the record shows that the February and March 2013 assessments against Unit SCB were delinquent and part of the debt secured by the Association's lien.

(d) Necessary Findings
in Foreclosure Decree

The Association argues that the court's decree was deficient because it did not state the legal description of Unit SCB, did not determine the "lien interests of the various parties," and did not "provide for the issuance of an order of sale and of the sale of the property."[47] The Association also contends that the court should not have "identified the amount due as a judgment."

[18] The purposes of a foreclosure action are to determine the existence of a lien and the amount and priority of the lien, and to obtain a decree directing the sale of the premises in satisfaction thereof if no redemption is made.[48] In a foreclosure action, the "judgment" is the order stating the amount due and directing a sale to satisfy the lien.[49] The necessary issues to be determined by the foreclosure decree are the execution of the agreement, the breach thereof, the identity of the real estate, and the amount remaining due.[50]

[19] We conclude that the court erred by not stating the legal description of Unit SCB in its decree. A foreclosure decree governs which property is to be sold at an execution sale, regardless of the description in subsequent documents

---

[47] Brief for appellee Twin Towers on cross-appeal at 27.

[48] *Wittwer v. Dorland*, 198 Neb. 361, 253 N.W.2d 26 (1977).

[49] *Federal Deposit Ins. Corp. v. Tidwell*, 820 P.2d 1338 (Okla. 1991); 55 Am. Jur. 2d, *supra* note 32, § 634.

[50] See, *Glissman v. Orchard, supra* note 42; *Columbus Land, Loan & Bldg. Assn. v. Wolken*, 146 Neb. 684, 21 N.W.2d 418 (1946); *Stuart v. Bliss*, 116 Neb. 305, 216 N.W. 944 (1927); *Union Central Life Ins. Co. v. Saathoff*, 115 Neb. 385, 213 N.W. 342 (1927).

and notices.[51] Thus, the legal description in the decree is extremely important.[52] We note that § 76-841—which is listed in § 76-826(a)—states the particulars of a sufficient legal description for a condominium unit.

We determine that the court did not err by failing to prioritize the "lien interests of the various parties."[53] The court found in a November 2013 order that neither Domina Law Group nor Credit Bureau Services had a lien interest in Unit SCB. In February 2012, the court sustained the Association's motion to dismiss Gateway Community Bank as a party to the action.

Finally, we conclude that the entry of a "judgment"—rather than a "decree"—and the statement that the Association could "foreclose"—rather than a "provi[sion] for the issuance of an order of sale"—do not rise to the level of prejudicial error.[54] Generally, an equity court's decision is termed a "decree" and the decision of a court of law is termed a "judgment."[55] But it is clear enough that the court ordered Bel Fury to pay its debt within 90 days and that if it failed to do so, the Association could have Unit SCB sold to satisfy the debt.

## VI. CONCLUSION

We conclude that the Association's initial miscalculation of assessments does not invalidate its lien against Unit SCB. Nor do we find merit in Bel Fury's remaining assignments. But on the Association's cross-appeal, we remand the cause with directions to award the Association attorney fees and costs, to include assessments for February and March 2013 as part of the debt secured by the lien, and to determine the legal description of the property subject to the lien.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.

---

[51] *Bates v. Schuelke*, 191 Neb. 498, 215 N.W.2d 874 (1974).

[52] See *id*. See, also, 55 Am. Jur. 2d, *supra* note 32, § 636.

[53] Brief for appellee Twin Towers on cross-appeal at 27.

[54] *Id*.

[55] See Black's Law Dictionary 497 (10th ed. 2014).