Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
03/11/2016 08:15 AM CST

Adair Asset Management, L.L.C., appellee,
v. Terry's Legacy, LLC, appellant, and
First State Bank et al., appellees.

___ N.W.2d ___

Filed March 11, 2016.    No. S-15-403.

1. **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.
2. **Tax Sale: Time.** Under Neb. Rev. Stat. § 77-1801 et seq. (Reissue 2009), any real property on which taxes have not been paid in full by the first Monday of March can be sold by the county treasurer for the amount of taxes due, plus interest and costs.
3. **Tax Sale.** The successful bidder under the bid-down procedure of Neb. Rev. Stat. § 77-1807 (Reissue 2009) acquires only an interest in the undivided percentage of the real estate.
4. **Tax Sale: Liens.** The purchaser of a tax sale certificate acquires a perpetual lien of the tax on the real property.
5. **____: ____.** If the purchaser of a tax sale certificate subsequently pays any taxes levied on the property, he or she shall have the same lien for them and may add them to the amount paid by him or her in the purchase.
6. **Statutes.** Statutes relating to the same subject are in pari materia and should be construed together.
7. **Statutes: Words and Phrases.** It is a recognized rule of statutory construction that where the same words are used repeatedly in the same act, unless the context requires otherwise, the words are to have the same meaning.
8. **Tax Sale: Deeds: Foreclosure: Liens: Notice.** There are two processes through which the holder of a tax certificate can obtain a deed to the property purchased at a tax sale. Under the "tax deed" method of chapter 77, article 18, of the Nebraska Revised Statutes, the holder of a tax certificate can obtain a tax deed from the county treasurer, after

having given proper notice. The other method is the "judicial foreclosure" method under chapter 77, article 19, of the Nebraska Revised Statutes. Through that method, the holder of a tax sale certificate can foreclose upon the tax lien in a court proceeding and compel sale of the property, yielding a sheriff's deed, under Neb. Rev. Stat. § 77-1902 (Reissue 2009).

9. **Statutes: Appeal and Error.** An appellate court will try to avoid, if possible, a statutory construction that would lead to an absurd result.

10. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Cheyenne County: DEREK C. WEIMER, Judge. Affirmed as modified, and cause remanded with directions.

Sterling T. Huff, of Island & Huff, P.C., L.L.O., for appellant.

Deana K. Walocha for appellee Adair Asset Management, L.L.C.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, and STACY, JJ.

CASSEL, J.

## INTRODUCTION

This appeal presents an issue of first, and perhaps last, impression—whether a tax sale certificate issued following a sale of real estate for delinquent property taxes "bid down"[1] to an undivided 1-percent interest in the property limits the lien to be judicially foreclosed[2] to only that fractional share. Because we conclude that it does, we modify the decree of foreclosure accordingly. And to cure a ministerial failure to seal a confidential document, we remand the cause with directions.

---

[1] See Neb. Rev. Stat. § 77-1807 (Reissue 2009).

[2] See Neb. Rev. Stat. § 77-1902 (Reissue 2009).

BACKGROUND

In March 2011, Cheyenne County, Nebraska, conducted its annual tax sale. Rather than using a traditional "round robin" format at the sale, and at the request of one of the bidders, the county treasurer used the "bid down" format provided by § 77-1807. That section has since been amended—thereby repealing the bid-down procedure—but the parties agree that the former version controls this appeal.

During the tax sale, Adair Asset Management, L.L.C. (Adair), purchased a tax sale certificate on certain real estate (the property) now owned by Terry's Legacy, LLC. The tax sale certificate was bid down to an undivided 1-percent interest. According to the certificate, Adair paid $2,223.44, representing the 2009 delinquent taxes on the property. After the sale, Adair paid all of the property taxes assessed against the property for the years 2010 through 2012.

In due course, Adair filed an action and obtained a decree judicially foreclosing the lien provided by the tax sale certificate. Although the complaint alleged that there was a potential claim against the property by First State Bank by virtue of a deed of trust and an assignment of rents and leases, the decree made no determination of the amount or extent of any lien under First State Bank's deed of trust. The decree found that "the right, title and interest of each of the Defendants named in the cause of action are wholly junior and inferior to the lien of [Adair]." The court determined that Adair was due $8,722.72 for the tax sale certificate, plus specific amounts representing interest, costs, and attorney fees. The decree provided for the customary relief in the form of an order of sale to be issued to the sheriff after the expiration of 20 days. The parties agree that in effect, the decree ordered a sale of a 100-percent interest in the property.

Terry's Legacy filed a timely appeal, which we moved to our docket.[3]

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

On appeal, Terry's Legacy makes seven assignments of error, one of which is dispositive. It assigns that the district court erred by failing to determine that Terry's Legacy retained a 99-percent interest in the property. In disposing of the appeal, we make directions to cure another assignment—that the court erred in not striking an affidavit that had confidential adoption documents attached to it.

## STANDARD OF REVIEW

[1] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[4]

## ANALYSIS

### Decree of Foreclosure

The dispositive issue on appeal is the extent of Adair's interest in the property when it acquired the tax sale certificate after bidding down to a 1-percent interest. Although the bid-down procedure was enacted into the statute over 100 years ago,[5] we have never been presented with this question. Because the tax sale certificate at issue in this appeal was sold on March 7, 2011, the proceedings are governed by the laws in effect on December 31, 2009.[6] And this may well be our last opportunity to address this statutory relic. Due to substantial statutory changes which became operative on January 1, 2015, and eliminated the bid-down procedure,[7] our decision today will affect only those properties sold pursuant to it.

[2] Properties with delinquent property taxes may be sold at a tax sale. Under Neb. Rev. Stat. § 77-1801 et seq. (Reissue 2009), any real property on which taxes have not been paid

---

[4] *Grammer v. Lucking*, 292 Neb. 475, 873 N.W.2d 387 (2016).

[5] See 1903 Neb. Laws, ch. 73, § 199, p. 461.

[6] See Neb. Rev. Stat. § 77-1837.01(2) (Cum. Supp. 2014).

[7] See 2013 Neb. Laws, L.B. 341, § 1.

in full by the first Monday of March can be sold by the county treasurer for the amount of taxes due, plus interest and costs.[8]

[3] The "bid down" statute uses specific words to describe what is being sold at the tax sale. It states, in pertinent part:

> The person who offers to pay the amount of taxes due on any *real property* for the smallest portion of *the same* shall be the purchaser, and when such person designates the smallest portion of *the real property* for which he or she will pay the amount of taxes assessed against any such property, *the portion thus designated* shall be considered an undivided portion.[9]

Thus, the successful bidder under the bid-down procedure of § 77-1807 acquires only an interest in the undivided percentage of the real estate. Here, Adair became the purchaser of the tax sale certificate after offering to pay the taxes due on the property for a 1-percent undivided interest in the property.

[4,5] Another statute in the same series uses essentially identical words to describe the interest in property transferred by a tax sale certificate. The purchaser of a tax sale certificate acquires a perpetual lien of the tax on "the real property."[10] If the purchaser subsequently pays any taxes levied on the property, "he or she shall have the same lien for them and may add them to the amount paid by him or her in the purchase."[11] Because Adair later paid other taxes levied on the property, it acquired the same lien for them—a lien secured by a 1-percent undivided interest in the property.

In other words, both statutes use the same words. Section 77-1818 requires that the certificate describe "the real property" purchased. Section 77-1807 also refers to "the real property" purchased, which is "the smallest portion of the real

---

[8] *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015).

[9] § 77-1807 (emphasis supplied).

[10] § 77-1818.

[11] *Id.*

property for which [the purchaser] will pay the amount of taxes assessed against any such property."

[6,7] Two fundamental principles of statutory construction require that these words be understood to mean the same thing. First, statutes relating to the same subject are in pari materia and should be construed together.[12] Second, it is a recognized rule of statutory construction that where the same words are used repeatedly in the same act, unless the context requires otherwise, the words are to have the same meaning.[13] Thus, we conclude that "the real property" as used is § 77-1818 similarly means the smallest portion of the property that the purchaser was willing to take in return for paying the taxes. In this case, the tax sale certificate stated "AS PER NE STATUTE SEC. #77-1807 BID DOWN TO 1% OF UNDIVIDED INTEREST OF PROPERTY" and it contained a legal description of the real estate. The real property purchased was a 1-percent undivided interest in the property.

[8] Adair correctly argues that there are two processes through which the holder of a tax certificate can obtain a deed to the property purchased at a tax sale.[14] Under the "tax deed" method of chapter 77, article 18, of the Nebraska Revised Statutes, the holder of a tax certificate can obtain a tax deed from the county treasurer, after having given proper notice.[15] The other method is the "judicial foreclosure" method under chapter 77, article 19, of the Nebraska Revised Statutes. Through that method, the holder of a tax sale certificate can foreclose upon the tax lien in a court proceeding and compel sale of the property, yielding a sheriff's deed, under § 77-1902.[16] We have said that although the overall objective of both procedures is the recovery of unpaid taxes on

---

[12] *Neun v. Ewing, supra* note 8.

[13] See *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986).

[14] See *Neun v. Ewing, supra* note 8.

[15] See *id.*

[16] See *id.*

real property, these procedures are two separate and distinct methods for the handling of delinquent real estate taxes which are neither comparable nor fungible.[17] Consequently, we have held that the provisions of chapter 77, article 18, are not interchangeable with the provisions of chapter 77, article 19.[18]

But Adair attributes too much significance to the choice of enforcement procedures. Both methods rely upon the existence of a tax sale certificate issued in compliance with § 77-1818. The existence of different procedures available to the holder to convert a tax sale certificate into a deed does not affect the meaning of the tax sale certificate.

[9] It would be absurd to allow a purchaser of a tax sale certificate to change its meaning simply by electing to pursue a judicial foreclosure. An appellate court will try to avoid, if possible, a statutory construction that would lead to an absurd result.[19] Thus, we conclude that Adair can foreclose only upon its undivided 1-percent interest in the property.

And in this proceeding in equity,[20] our conclusion comports with the notion of fairness. It would be unjust to award, in foreclosure proceedings, an interest in the entire property to a purchaser who acquired the tax sale certificate by a bid for less than a 100-percent interest. There may have been several bidders willing to pay the amount of taxes due on the property for a 100-percent interest of the property. But once the interest in the property dropped below 100 percent, those bidders may have ceased bidding. It is unfair to them for Adair to receive a 100-percent interest of the property when Adair became the purchaser only because it offered to pay the taxes due for the smallest interest in the property. Because Adair bid

---

[17] *Id.*

[18] *Id.*

[19] *Merie B. on behalf of Brayden O. v. State*, 290 Neb. 919, 863 N.W.2d 171 (2015).

[20] See *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015) (real estate foreclosure action is action in equity).

down to a 1-percent interest, it is limited to a 1-percent interest in foreclosure.

Terry's Legacy does not dispute that Adair was entitled to a decree of foreclosure of its tax lien; only the extent of the property subject to the lien is disputed. According to the decree, if redemption was not made, the property would be sold "as upon execution in the entire tract." Thus, the decree had the effect of erroneously treating Adair's interest as a 100-percent undivided interest in the property. But Adair's lien was limited to an undivided 1-percent interest in the real estate, and the decree must be modified accordingly.

We therefore modify the decree to provide that Adair's lien is limited to a 1-percent interest in the property. As to that 1-percent interest, Adair's lien is superior to the right, title, and interest of Terry's Legacy and the other parties joined as defendants below. It necessarily follows that the other 99-percent undivided interest is not subject to the decree of foreclosure or to any order of sale issued pursuant to that decree.

### Remaining Assignments of Error

[10] We need not address the remaining errors assigned by Terry's Legacy other than to cure one ministerial failure of the official court reporter. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[21]

Terry's Legacy assigned that the district court erred by failing to strike an exhibit that contained confidential information. Shortly after the summary judgment hearing, Terry's Legacy alerted the district court to this issue via a motion to strike or seal an affidavit. The court granted the motion and ordered that the affidavit be sealed by the court reporter pursuant to Neb. Ct. R. § 6-1521 (rev. 2012). However, the court reporter

---

[21] *D.I. v. Gibson*, 291 Neb. 554, 867 N.W.2d 284 (2015).

apparently failed to seal the affidavit and it was included in the public bill of exceptions.

To cure this failure to perform a ministerial function, we remand the cause with directions. The official court reporter is directed to seal the affidavit in the bill of exceptions, as previously ordered by the district court. And we direct the clerk of the district court, upon return of the bill of exceptions from our clerk, to verify that the affidavit has been sealed before returning the bill of exceptions to the district court's files.

In order to ensure that the confidential information is not disseminated in the interim, we direct our clerk to make the bill of exceptions unavailable to the public until it is returned to the district court.

## CONCLUSION

Because Adair purchased the tax sale certificate by bidding down to a 1-percent undivided interest of property, its lien to be foreclosed under § 77-1902 is limited to 1 percent of the property. We modify the decree of foreclosure to apply only to Adair's undivided 1-percent interest in the property. As so modified, the decree is affirmed. And we remand the cause with directions, as set forth above, to cure the failure to seal the affidavit containing confidential information.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTIONS.