Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/06/2016 09:09 AM CDT

State of Nebraska, appellee, v.
Karry R. Neisius, appellant.
___ N.W.2d ___

Filed May 6, 2016.    No. S-15-816.

1. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for error appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.
4. **Motor Vehicles: Licenses and Permits.** In order to operate a commercial motor vehicle on a Nebraska highway, a Nebraska resident must possess a commercial driver's license or an LPC-learner's permit.
5. **Motor Vehicles: Licenses and Permits: Words and Phrases.** For purposes of the Motor Vehicle Operator's License Act, the definitions found in Neb. Rev. Stat. §§ 60-463.01 to 60-478 (Reissue 2010 & Cum. Supp. 2012) shall be used.
6. **Statutes: Appeal and Error.** An appellate court gives effect to all parts of a statute and avoids rejecting as superfluous or meaningless any word, clause, or sentence.

Appeal from the District Court for Dixon County, Paul J. Vaughan, Judge, on appeal thereto from the County Court for Dixon County, Douglas L. Luebe, Judge. Judgment of District Court affirmed.

David E. Copple and Michelle M. Schlecht, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Cassel, J.

## INTRODUCTION

Karry R. Neisius appeals from his conviction and sentence, upon stipulated facts, for driving a commercial motor vehicle without obtaining a commercial driver's license (CDL). The issue is whether the power unit and hay grinder that he was driving was a commercial motor vehicle. Based upon definitions in the Motor Vehicle Operator's License Act (Act), we conclude that it was. Accordingly, we affirm.

## BACKGROUND

Neisius' employer provided custom hay grinding services. Its customers were farmers in the region surrounding its principal place of business in Beemer, Nebraska. Neisius was a hay grinder operator. His duties included transporting the hay grinder and its power unit between jobsites and back to one of his employer's offices located in Wakefield, Nebraska.

The hay grinder used by Neisius was designed to operate with a power unit. The parties stipulated as follows:

> The power unit is a truck that is used to haul the hay grinder from site to site. They connect via a fifth wheel attachment mechanism and move as one unit. In addition to being dependent on the power unit for transportation, the hay grinder is dependent on the power unit to stabilize it while in operation. The hay grinder can not [sic] be operated properly without the power unit being attached or connected to it. The State disputes the characterization of the power unit.

The trial record does not illuminate the precise nature of the State's dispute regarding the "characterization" of the power

unit. According to a brochure in evidence, the hay grinder is built upon a semitrailer truck. Based on a photograph of the power unit and hay grinder in the record, it appears that the hay grinder/semitrailer truck is connected to a tractor unit. The unit could also be described in common parlance as a truck-tractor or semitractor.

In September 2013, law enforcement stopped Neisius as he was driving the power unit and hay grinder to Wakefield. Neisius possessed a valid Class O driver's license, but he did not have a CDL or an LPC-learner's permit. Law enforcement issued Neisius a citation for driving a commercial motor vehicle without obtaining a CDL.

The State filed a complaint in the county court for Dixon County charging Neisius with operating a commercial motor vehicle without obtaining a CDL in violation of Neb. Rev. Stat. § 60-4,141(1)(a) (Reissue 2010). Neisius pled not guilty, and the parties tried the matter to the bench on stipulated facts.

The county court found Neisius guilty. The court concluded that the subject vehicle was a commercial motor vehicle defined within the Act. The court reasoned that the vehicle was used in commerce to transport passengers or property—Neisius as an employee of the vehicle's owner and the hay grinder which was owned by Neisius' employer—and that the power unit combined with the hay grinder had a "total weight combination" of 63,100 pounds. The county court imposed a $100 fine and ordered Neisius to pay costs of $49.

Neisius appealed to the district court. He alleged that the evidence was insufficient to support the conviction and that the conviction was contrary to law. The district court affirmed the conviction and sentence.

Upon Neisius' further appeal, we moved the case to our docket.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

## ASSIGNMENT OF ERROR

Neisius alleges that the district court erred in affirming the county court's decision for three reasons. But all three are variations of his assertion that the vehicle—the combination of the power unit and hay grinder—was not a commercial motor vehicle requiring a CDL.

## STANDARD OF REVIEW

[1,2] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[2] When reviewing a judgment for error appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[3] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[4]

## ANALYSIS

[4] The central issue is whether Neisius needed a CDL in order to lawfully drive the power unit and hay grinder. His Class O driver's license authorized him to "operate on highways any motor vehicle except a commercial motor vehicle or motorcycle."[5] In order to operate a commercial motor vehicle on a Nebraska highway, a Nebraska resident must possess a CDL or an LPC-learner's permit.[6] The issue turns on whether the power unit and hay grinder constituted a commercial motor vehicle.

---

[2] *State v. Kleckner*, 291 Neb. 539, 867 N.W.2d 273 (2015).

[3] *Id.*

[4] *Adair Asset Mgmt. v. Terry's Legacy, ante* p. 32, 875 N.W.2d 421 (2016).

[5] See Neb. Rev. Stat. § 60-480(1) (Reissue 2010).

[6] See Neb. Rev. Stat. § 60-4,137 (Cum. Supp. 2014).

### Definitions of Motor Vehicle

One of Neisius' principal arguments relies upon the existence of various definitions of "motor vehicle" in chapter 60 of the Nebraska Revised Statutes, governing "Motor Vehicles." He urges that these definitions be "reviewed as a collection of statutes."[7]

It is certainly true that differing definitions of "motor vehicle" are employed within chapter 60. Several define a motor vehicle as a vehicle "propelled by any power other than muscular power"[8] and then itemize vehicles excluded from the definition. In the Nebraska Rules of the Road, a motor vehicle is defined as "every self-propelled land vehicle, not operated upon rails, except mopeds, self-propelled chairs used by persons who are disabled, and electric personal assistive mobility devices."[9] The definition contained in the Motor Vehicle Industry Regulation Act varies considerably and focuses on whether "evidence of title is required as a condition precedent to registration under the laws of this state."[10]

As Neisius points out, two statutes exclude a power unit and hay grinder from the definition of a motor vehicle. Statutes within the Motor Vehicle Certificate of Title Act[11] and the Motor Vehicle Registration Act[12] provide that "[m]otor vehicle does not include . . . power unit hay grinders or a combination which includes a power unit and a hay grinder when operated without cargo." The first act generally governs which types of vehicles are required to have certificates of title.[13] The second

---

[7] Brief for appellant at 4.

[8] See Neb. Rev. Stat. §§ 60-123, 60-339, and 60-471 (Cum. Supp. 2014).

[9] Neb. Rev. Stat. § 60-638 (Reissue 2010).

[10] Neb. Rev. Stat. § 60-1401.25 (Reissue 2010).

[11] § 60-123.

[12] § 60-339.

[13] See, generally, Neb. Rev. Stat. §§ 60-137 to 60-149 (Reissue 2010, Cum. Supp. 2014 & Supp. 2015).

act generally pertains to requirements for registration of vehicles for operation on Nebraska roads and highways.[14]

But Neisius was charged under the Act, and its definition of "[m]otor vehicle"[15] does not contain a similar exclusion of a power unit and hay grinder. Rather, § 60-471 states:

Motor vehicle means all vehicles propelled by any power other than muscular power. Motor vehicle does not include (1) self-propelled chairs used by persons who are disabled, (2) farm tractors, (3) farm tractors used occasionally outside general farm usage, (4) road rollers, (5) vehicles which run only on rails or tracks, (6) electric personal assistive mobility devices as defined in section 60-618.02, and (7) off-road designed vehicles not authorized by law for use on a highway, including, but not limited to, go-carts, riding lawn mowers, garden tractors, all-terrain vehicles and utility-type vehicles as defined in section 60-6,355, minibikes as defined in section 60-636, and snowmobiles as defined in section 60-663.

Both the power unit and hay grinder are motor vehicles under this definition. Each constitutes a vehicle as a "device in, upon, or by which any person or property is or may be transported or drawn upon a highway."[16] And because the power unit and hay grinder are propelled by power other than muscular power and are not excluded as a motor vehicle under § 60-471, they fall within the definition.

Neisius argues that we must view collectively all of the definitions of a motor vehicle contained in chapter 60. He cites a case stating that under principles of statutory construction, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so

---

[14] See, generally, Neb. Rev. Stat. §§ 60-362 to 60-369 and 60-373 to 60-385 (Reissue 2010, Cum. Supp. 2014 & Supp. 2015).

[15] § 60-471.

[16] See Neb. Rev. Stat. § 60-676 (Reissue 2010).

that different provisions of an act are consistent, harmonious, and sensible.[17]

[5,6] This argument, however, ignores the statutory mandate that "[f]or purposes of the . . . Act, the definitions found in sections 60-463.01 to 60-478 shall be used."[18] An appellate court gives effect to all parts of a statute and avoids rejecting as superfluous or meaningless any word, clause, or sentence.[19] In order to give effect to the statutory mandate of § 60-463, we must use the definition of a motor vehicle found in § 60-471 and not the definitions contained within other acts and articles of chapter 60.

Moreover, to do as Neisius suggests would violate the command of each act. In each instance, the Legislature has prescribed the definitions to be used. The Motor Vehicle Certificate of Title Act contains a statute mandating that specified definitions within that act be used for its "purposes."[20] A statute in the Motor Vehicle Registration Act does likewise.[21] So does the Act before us. Each legislative act provides its own definitions. With respect to these definitions, these acts are not, as Neisius contends, components of a series or collection of statutes pertaining to a certain subject matter. Each act is separate and independent. Neisius' first principal argument lacks merit.

## DEFINITION OF COMMERCIAL MOTOR VEHICLE

Just as § 60-463 requires us to use the Act's definition of "motor vehicle," it also mandates that we use the Act's

---

[17] See *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009).

[18] Neb. Rev. Stat. § 60-463 (Reissue 2010).

[19] *Hoppens v. Nebraska Dept. of Motor Vehicles*, 288 Neb. 857, 852 N.W.2d 331 (2014).

[20] Neb. Rev. Stat. § 60-102 (Cum. Supp. 2014).

[21] Neb. Rev. Stat. § 60-302 (Cum. Supp. 2014).

definition of "commercial motor vehicle."[22] Neisius' second principal argument addresses a specific phrase within this definition. Although this definitional statute has two subsections—one generally defining the term and another excluding certain types of vehicles from the general definition—Neisius addresses only the first subsection. Therefore, we examine the disputed language.

This disputed language defines "[c]ommercial motor vehicle" to mean a "motor vehicle or combination of motor vehicles *used in commerce to transport passengers or property*" if it meets any one of four characteristics regarding weight, design, or use.[23] Neisius does not dispute that one of the weight characteristics applies to the power unit and hay grinder. Thus, we focus specifically on the italicized phrase.

To fit within the definition of a commercial motor vehicle, the power unit and hay grinder—a combination of motor vehicles—must be "used in commerce to transport passengers or property."[24] Neisius does not dispute that the combination is used in commerce, but he challenges both of the other components—transportation of passengers or transportation of property. Because the statute is phrased in the disjunctive, either usage will suffice.

We assume, without deciding, that the county court erred in characterizing Neisius as a "passenger" in the power unit and hay grinder combination. The county court stated that the vehicle was used to transport Neisius as a passenger. However, Neisius contends that he was the driver and not a passenger. The Act does not define "passenger." It could be argued that the statutory definition of "[c]ommercial motor vehicle" includes a driver as a passenger by language encompassing vehicles "designed to transport sixteen or more passengers,

---

[22] See Neb. Rev. Stat. § 60-465 (Reissue 2010).

[23] § 60-465(1) (emphasis supplied).

[24] *Id.*

including the driver."[25] But the Act defines "[o]perator or driver" to mean "any person who drives a motor vehicle."[26] Other provisions of the Act use "passenger" in a context which would clearly exclude the driver.[27] In this appeal, we need not decide whether Neisius was a "passenger" when he operated the power unit and hay grinder.

Regardless of whether the combination was "used in commerce" to "transport passengers," it clearly was "used in commerce" to "transport . . . property."[28] The parties stipulated that the power unit was a truck or tractor used to haul the hay grinder from site to site. In that sense, the power unit was used to transport property—the hay grinder—which happened to be built on a semitrailer. And there can be no doubt that the combination of vehicles was used in "commerce," that is, as part of "[t]he exchange of goods and services, esp. on a large scale involving transportation between cities, states, and countries."[29] The county court correctly determined that the power unit and hay grinder combination was used in commerce to transport property.

Neisius does not contest that the combination of the power unit and hay grinder otherwise falls within the definition of a commercial motor vehicle. Indeed, the parties stipulated regarding the weights of the components. And Neisius does not assert that any of the exclusions of § 60-465(2) applies.

### SUFFICIENCY OF EVIDENCE

Although Neisius assigned that the evidence was insufficient to support his conviction, this argument depended upon his statutory arguments. Because they fail, his sufficiency argument also lacks merit.

---

[25] § 60-465(1)(c).

[26] Neb. Rev. Stat. § 60-473 (Reissue 2010).

[27] See, e.g., Neb. Rev. Stat. § 60-4,120.01(3)(b) (Reissue 2010).

[28] See § 60-465(1).

[29] Black's Law Dictionary 325 (10th ed. 2014).

Purpose of Act

Before concluding, we address Neisius' argument that interpreting the power unit and hay grinder to be a commercial motor vehicle "does nothing to further the stated purpose of the . . . Act."[30] He directs us to a statute stating:

> It is the intent of the Legislature that the department develop, implement, and maintain processes for the issuance of operators' licenses and state identification cards designed to protect the identity of applicants for and holders of such licenses and cards and reduce identity theft, fraud, forgery, and counterfeiting to the maximum extent possible with respect to such licenses and cards. The department shall adopt security and technology practices to enhance the enrollment, production, data storage, and credentialing system of such licenses and cards in order to maximize the integrity of the process.[31]

Neisius argues that requiring the operator of a power unit and hay grinder to obtain a CDL does not further the intent of the act "to prevent identity theft and streamline the process of credentialing drivers."[32]

But Neisius overlooks the stated purposes of the section under which he was charged. Aside from implementing requirements mandated by federal laws and regulations, the purposes of certain statutes, including § 60-4,141, are "to reduce or prevent commercial motor vehicle accidents, fatalities, and injuries by: (1) Permitting drivers to hold only one operator's license; (2) disqualifying drivers for specified offenses and serious traffic violations; and (3) strengthening licensing and testing standards."[33] The Legislature focused on the enhanced risk of harm associated with the operation of large, heavy commercial vehicles.

---

[30] Brief for appellant at 23.

[31] Neb. Rev. Stat. § 60-462.02 (Cum. Supp. 2014).

[32] Brief for appellant at 24.

[33] Neb. Rev. Stat. § 60-4,132 (Cum. Supp. 2012).

The contested requirement furthers the legislative purpose. A combination of vehicles with a gross vehicle weight rating in excess of 63,000 pounds certainly poses a greater risk of harm in the event of an accident. Requiring the operator of such a vehicle to pass the necessary testing in order to obtain a CDL furthers the purpose of reducing or preventing commercial motor vehicle accidents, fatalities, and injuries.

If the Legislature believes that a power unit and hay grinder combination does not pose the type of risk it was intending to prevent and that excluding the combination from the CDL requirement would not violate the conditions for federal funding it desires to obtain, it could amend the Act's definition of "motor vehicle"[34] in a fashion similar to the comparable definitions of the Motor Vehicle Certificate of Title Act[35] and the Motor Vehicle Registration Act.[36] It is not a proper function of this court to do so in the guise of statutory construction.

## CONCLUSION

We conclude that the power unit and hay grinder operated by Neisius was a commercial motor vehicle under the Act. Because Neisius did not possess a CDL, his conviction for operating a commercial motor vehicle without obtaining a CDL conforms to the law and is supported by competent evidence. We affirm the judgment of the district court, which affirmed Neisius' conviction and sentence.

Affirmed.

---

[34] § 60-471.

[35] § 60-123.

[36] § 60-339.