Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/21/2017 09:08 AM CDT

DOUGLAS HOUSE, APPELLANT, V.
MICHELE HOUSE, APPELLEE.
___ N.W.2d ___

Filed March 21, 2017.    No. A-15-1132.

1.  **Contempt: Appeal and Error.** In a civil contempt proceeding where
    a party seeks remedial relief for an alleged violation of a court order,
    an appellate court employs a three-part standard of review in which (1)
    the trial court's resolution of issues of law is reviewed de novo, (2) the
    trial court's factual findings are reviewed for clear error, and (3) the trial
    court's determinations of whether a party is in contempt and of the sanc-
    tion to be imposed are reviewed for abuse of discretion.
2.  **Child Support.** Neb. Rev. Stat. § 43-512 (Supp. 2015) details the proce-
    dure by which any dependent child, or any relative or eligible caretaker
    of such dependent child, may file a written application for financial
    assistance to the Department of Health and Human Services.
3.  **Child Support: Prosecuting Attorneys.** Pursuant to Neb. Rev. Stat.
    § 43-512(2) (Supp. 2015), following the application for financial assist-
    ance, the Department of Health and Human Services investigates to
    see if the child has a parent or stepparent who is able to contribute to
    the support of such child and has failed to do so; upon such a finding,
    a copy of the finding of such investigation and a copy of the appli-
    cation shall immediately be filed with the county attorney or autho-
    rized attorney.
4.  **Actions: Child Support: Prosecuting Attorneys.** Pursuant to Neb. Rev.
    Stat. § 43-512.01 (Reissue 2016), it is the duty of the county attorney
    or authorized attorney to immediately take action against the nonsup-
    porting parent and initiate a child support enforcement action. If the
    county attorney initiates an action, he or she shall file either a criminal
    complaint for nonsupport under Neb. Rev. Stat. § 28-706 (Reissue 2016)
    or a civil complaint against the nonsupporting parent or stepparent under
    Neb. Rev. Stat. § 43-512.03 (Reissue 2016).

5. ____: ____: ____. Pursuant to Neb. Rev. Stat. § 43-512.03(4) (Reissue 2016), the State of Nebraska shall be a real party in interest in any action brought by or intervened in by a county attorney to enforce an order for child support.

6. ____: ____: ____. Pursuant to Neb. Rev. Stat. § 43-512.03(1)(c) (Reissue 2016), the county attorney or authorized attorney shall enforce child support orders by civil actions or administrative actions, citing the defendant for contempt, or filing a criminal complaint.

7. **Statutes: Appeal and Error.** An appellate court will try to avoid, if possible, a statutory construction that would lead to an absurd result.

8. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction deals with a court's ability to hear a case; it is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

9. **Courts: Jurisdiction: Contempt.** A court that has jurisdiction to issue an order also has the power to enforce it; the power to punish for contempt is incident to every judicial tribune.

10. **Child Support: Federal Acts: Evidence.** Pursuant to Neb. Rev. Stat. § 43-3342.01 (Reissue 2016), a true copy of the record of payments, balances, and arrearages maintained for services received under title IV-D of the federal Social Security Act is prima facie evidence, without further proof or foundation, of the balance of any amount of support order payments that are in arrears and of all payments made and disbursed to the person or agency to whom the support order payment is to be made; such evidence shall be considered to be satisfactorily authenticated, shall be admitted as prima facie evidence of the transactions shown in such evidence, and is rebuttable only by a specific evidentiary showing to the contrary.

11. **Child Support: Contempt: Presumptions: Proof.** Pursuant to Neb. Rev. Stat. § 42-358(3) (Reissue 2016), a rebuttable presumption of contempt shall be established if a prima facie showing is made that the court-ordered child or spousal support is delinquent.

Appeal from the District Court for Lancaster County: Sᴜꜱᴀɴ I. Sᴛʀᴏɴɢ, Judge. Affirmed.

Douglas House, pro se.

Joe Kelly, Lancaster County Attorney, and Jordan M. Talsma for appellee.

Riedmann and Bishop, Judges, and McCormack, Retired Justice.

Bishop, Judge.

Douglas House appeals from an order of the district court for Lancaster County that found him in contempt of court for failure to pay child support. We affirm.

## BACKGROUND

Douglas and Michele House were married in 2007 and had one child, born that same year. The parties divorced in June 2012. Pursuant to the parties' parenting plan which was approved and adopted in the divorce decree, Michele received physical custody of the parties' minor child, subject to Douglas' reasonable rights of parenting time. Douglas was ordered to pay child support in the amount of $346 per month, commencing on July 1.

On May 11, 2015, a deputy Lancaster County Attorney filed a "Motion for an Order to Show Cause and to Appear," pursuant to Neb. Rev. Stat. § 43-512.03 (Reissue 2016). The motion alleged that Douglas was ordered to pay child support in the amount of $346 per month, but according to the Department of Health and Human Services (DHHS) payment history report, he was delinquent "in an amount greater or equal to the support due and payable for a one month period of time." The deputy Lancaster County Attorney asked the court to order Douglas to show cause as to why he should not be held in contempt of court for failure to comply with the order directing him to pay child support. An order to show cause was entered on May 12, directing Douglas to appear on June 18 and show cause why he should not be held in contempt; he was ordered to bring income tax returns for the past 3 years and his last three wage statements. The court also appointed the Lancaster County Attorney to commence contempt proceedings against Douglas. For reasons not apparent from our record, the show cause/contempt hearing was not held on June 18.

A hearing on the show cause/contempt action was held on November 18, 2015. The deputy county attorney appeared on behalf of the State, and shall be referred to as the "State" hereafter. Douglas appeared pro se. For his opening statement, Douglas said he wanted to "make a statement as to [his] indigence . . . and [his] inability to pay at this time, but, other than that, [he would] let the prosecution go forward."

The State offered into evidence exhibit 1, a certified DHHS payment history report dated November 9, 2015. Douglas objected, arguing that it "doesn't have a wet ink signature, it's not sworn to that this is accurate and correct." The court and the State pointed out that the report had a certification stamp on it, and the State informed Douglas that "it's an electronic signature." Douglas responded, "Well, Your Honor, I really don't know if any person has ever really signed this thing, as far as an electronic signature. Shouldn't a — anything be — that's entered on the court record be a wet ink signature?" The court said, "This is sufficient for a court record," then received exhibit 1 and overruled Douglas' objection. Exhibit 1 showed that as of November 9, Douglas owed a child support balance of $4,112.94 (he had made no child support payments since November 2014). After offering exhibit 1 into evidence and having it received, the State rested.

After being sworn in, Douglas said that in order for the State to bring a claim under § 43-512.03, there has to be a "request" assigning power to be a real party in interest to the county attorney, "[a]nd the record is absent of a request" from DHHS or any other entity that is "authorized." Douglas argued, "For the county attorney to have that authority, he needs to bring forth that request. He has no authority right now . . . . So, I object to this entire proceeding, this claim being brought forth without powers assigned." The State responded that DHHS had requested the claim be brought to enforce the child support order because the recipient of the child support was receiving public assistance benefits. The State acknowledged that DHHS' request had not been made part of the record, but the

State was not aware of any requirement that the request be made part of the record. The court concluded that the State had complied with the statute.

The State then argued that under Neb. Rev. Stat. § 42-358 (Reissue 2016), there is a rebuttable presumption of contempt upon a prima facie showing that the defendant is behind on his child support. When asked if he had anything to rebut the evidence that he was behind in his child support payments, Douglas continued to object to the State's authority to bring the claim. Douglas then said:

> I am indigent. I've got, publicly declared, two poverty affidavits on the court record. I'm currently in the appellate court with a juvenile case. The custody of my daughter is up in the air. It — the juvenile case has been — my brief has just been accepted.
>
> I'm also — currently, the District Court is going to receive an appeal in which I was denied a substantial right during a special proceeding. I appealed that, also, Your Honor. And, you know, so my poverty affidavits in itself speak for themselves. I — I — I cannot pay right now. That's just — it's that simple. I'm indigent. I am under — I have nothing.

The district court informed Douglas that there was a rebuttable presumption that he was in willful contempt of court and that based on the evidence, it found him in willful contempt. Douglas continued to argue that it was an impossibility for him to pay at that time.

In its order filed on November 18, 2015, the district court found Douglas to be in willful contempt of court. The court ordered Douglas to serve 30 days in jail, but suspended the sentence as long as he paid $346 per month on current child support and $50 per month on arrearages commencing January 1, 2016. If Douglas complied with the payment schedule for 24 months, he would be purged of contempt and the sentence would be deemed null and void. If Douglas failed to comply, he would be imprisoned pursuant to his

sentence and would be released and purged of contempt upon payment of the lesser of $3,500 or all arrearages then due and owing.

On December 1, 2015, Douglas filed a "Motion by Affidavit to Modify Judgment," asking the district court to "correct [its] errors" from the November 18 show cause hearing. Douglas claimed the following errors: The State did not have standing, the "'payment history'" was not a "valid bill of costs for child support without anyone attesting to it or signing off on it," and his poverty was not willful contempt of court. On December 3, the district court overruled Douglas' motion.

Douglas timely appeals the district court's order.

## ASSIGNMENTS OF ERROR

Douglas assigns, restated: (1) The State did not have standing to enforce a child support order without evidence of proper written authority; (2) the district court did not have subject matter jurisdiction in this action, since there was already an existing support order; (3) the district court erred when it admitted into evidence the child support payment history, "a wholly defective written instrument"; (4) the district court erred when it modified an existing child support order; and (5) the district court erred when it found Douglas to be in willful contempt despite his impoverished status.

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

## ANALYSIS

*Standing.*

Douglas argues the State lacks standing to bring the contempt action without evidence of a signed, written request by DHHS conferring such authority.

[2-4] In response, the State asserts that it has the authority to initiate contempt proceedings from a series of Nebraska statutes, see Neb. Rev. Stat. §§ 43-512 through 43-512.18 (Reissue 2016), and that these statutes do not require the State to make part of the court record any request from DHHS to initiate such proceedings. The State correctly states that § 43-512 (Supp. 2015) details the procedure by which any dependent child, or any relative or eligible caretaker of such dependent child, may file a written application for financial assistance to DHHS. (Pursuant to Neb. Rev. Stat. § 43-504(1) (Reissue 2016), a dependent child includes a child under 19 years of age who has received or is in need of state aid.) Following the application, DHHS investigates to see if the child has a parent or stepparent who is able to contribute to the support of such child and has failed to do so; upon such a finding, a copy of the finding of such investigation and a copy of the application "shall immediately be filed with the county attorney or authorized attorney." § 43-512(2). (Section 43-512(6)(a) defines an "[a]uthorized attorney.") Section 43-512.01 states in relevant part that it is the duty of the county attorney or authorized attorney to "immediately take action" against the nonsupporting parent, and initiate a child support enforcement action. "If the county attorney initiates an action, he or she shall file either a criminal complaint for nonsupport under section 28-706 or a civil complaint against the nonsupporting parent or stepparent under section 43-512.03." § 43-512.01.

In its motion for an order to show cause and to appear, the State asserted it was filing the motion under the authority of § 43-512.03, but did not specify under which subsection of the statute it was proceeding. Section 43-512.03 provides in relevant part as follows:

(1) The county attorney or authorized attorney shall:

(a) On request by [DHHS] as described in subsection (2) of this section or when the investigation or application filed under section 43-512 or 43-512.02 justifies, file a complaint against a nonsupporting party in the district, county, or separate juvenile court praying for an order for child or medical support in cases when there is no existing child or medical support order. After notice and hearing, the court shall adjudicate the child and medical support liability of either party and enter an order accordingly;

(b) Enforce child, spousal, and medical support orders by an action for income withholding pursuant to the Income Withholding for Child Support Act;

(c) In addition to income withholding, *enforce child*, spousal, and medical *support orders* by other civil actions or administrative actions, *citing the defendant for contempt*, or filing a criminal complaint;

(d) Establish paternity and collect child and medical support on behalf of children born out of wedlock; and

(e) Carry out sections 43-512.12 to 43-512.18.

(Emphasis supplied.)

[5] Because the State was attempting to enforce an already existing child support order, the State's action falls under the authority of § 43-512.03(1)(c). And § 43-512.03(4) provides that "[t]he State of Nebraska shall be a real party in interest in any action brought by or intervened in by a county attorney . . . to enforce an order for child, spousal, or medical support." At the show cause/contempt hearing, the State said that DHHS had requested an action be brought to enforce the child support order because the recipient of the child support was receiving public assistance benefits. Contrary to Douglas' contention, we have found no authority stating that the request from DHHS is necessary evidence for the State to have standing in a contempt action under § 43-512.03. Compare *State on behalf of Hopkins v. Batt*, 253 Neb. 852,

573 N.W.2d 425 (1998) (prenotice-pleading case in which court found remedy in § 43-512.03 not applicable because there was no allegation child had received or was eligible to receive public assistance benefits). Accordingly, the State, as the real party in interest, had standing to bring the contempt action against Douglas.

*Subject Matter Jurisdiction.*

Douglas asserts that the district court "only has subject matter jurisdiction over an action brought pursuant to [§] 43-512.03 when there is no existing child support order." Brief for appellant at 7. And since there was already an existing child support order in this case, Douglas suggests the district court did not have subject matter jurisdiction over the present action. In support of his argument, Douglas cites to *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991), and *State ex rel. Cammarata v. Chambers*, 6 Neb. App. 467, 574 N.W.2d 530 (1998). However, both of these cases addressed subject matter jurisdiction with regard to only one subsection of § 43-512.03—the subsection dealing with the State initiating a child support action, as discussed next.

It is true that in *State ex rel. Gaddis v. Gaddis, supra*, the Nebraska Supreme Court held that "as a prerequisite for an action under § 43-512.03, there cannot be an existing child support order in any jurisdiction" and that "a court has subject matter jurisdiction for an action under § 43-512.03 only 'when there is no existing child support order' in Nebraska or any other jurisdiction." 237 Neb. at 267-68, 465 N.W.2d at 775. See, also, *State ex rel. Cammarata v. Chambers, supra*, (relying on *State ex rel. Gaddis v. Gaddis, supra*, and holding the same). In both cases, the Nebraska Supreme Court and this court generally referred to § 43-512.03 in the analysis. However, a complete reading of both cases makes it clear that their holdings only applied to one subsection of § 43-512.03, specifically what is currently § 43-512.03(1)(a), which pertains to initiating a child support action. The holdings did not

involve other subsections of the statute permitting, as in this case, enforcement of a child support order.

Although the Supreme Court in *State ex rel. Gaddis v. Gaddis, supra*, makes general references to § 43-512.03 throughout the opinion, it does specifically identify the subsection at issue when it states that "the issue is whether the district court had subject matter jurisdiction for the action commenced under § 43-512.03(1)." 237 Neb. at 266, 465 N.W.2d at 775. In that case, it was acknowledged by the State, and substantiated at trial, that there was already a child support order in effect in Colorado at the time the State initiated a petition in Nebraska seeking a child support order against a father who had been making payments pursuant to the Colorado order. It was not an action to enforce child support as in the case before this court; rather, the State was seeking to establish a child support order when such an order already existed.

The version of § 43-512.03 (Reissue 1988) in effect at that time provided:

The county attorney or authorized attorney shall:

(1) On request by the Department of Social Services or when the investigation or application filed under [§] 43-512 or 43-512.02 justifies, file a petition against a nonsupporting parent or stepparent in the district, county, or separate juvenile court praying for an order for child support in cases when there is no existing child support order. After notice and hearing, the court shall adjudicate child support liability of the nonsupporting parent or stepparent and enter an order accordingly;

(2) Enforce child and spousal support orders by an action for income withholding pursuant to the Income Withholding for Child Support Act;

(3) If income withholding is not feasible, enforce child and spousal support orders by other civil actions, citing the defendant for contempt, or filing a criminal complaint; and

(4) Establish paternity and collect child support on behalf of children born out of wedlock.

The Supreme Court set forth only the language from subsection (1) above in its opinion, and the language of § 43-512.03(1) at the time of the *Gaddis* opinion corresponds to what is currently § 43-512.03(1)(a). *Gaddis* makes no reference to the other subsections of § 43-512.03, which include specific authority for the State to enforce child support orders. Accordingly, we read *Gaddis* to apply only to § 43-512.03(1)(a), and not to the other subsections of the statute.

Similarly, in *State ex rel. Cammarata v. Chambers*, 6 Neb. App. 467, 574 N.W.2d 530 (1998), the State brought an action, pursuant to § 43-512.03 et seq. (Reissue 1993, Cum. Supp. 1994 & Supp. 1995), seeking child support and medical coverage from a father, even though past orders for child support had been entered. This court said, "[i]n relevant part," the version of § 43-512.03 in effect at the time of trial provided as follows:

(1) The county attorney or authorized attorney shall:

(a) On request by the Department of Social Services . . . file a petition against a nonsupporting parent or stepparent in the district, county, or separate juvenile court praying for an order for child or medical support in cases when there is no existing child or medical support order.

*State ex rel. Cammarata v. Chambers*, 6 Neb. App. at 470, 574 N.W.2d at 532. Relying on the Supreme Court's holding in *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991), this court held that because there was an existing support order, the State was not authorized to file the petition and the district court did not have subject matter jurisdiction.

In *State ex rel. Cammarata v. Chambers, supra*, like in *State ex rel. Gaddis v. Gaddis, supra*, this court generally referred to § 43-512.03 in its analysis, although notably, the court only set forth and addressed one subsection of that statute, specifically § 43-512.03(1)(a). A complete reading of *State ex*

*rel. Cammarata v. Chambers, supra*, makes it clear that the holding only applied to § 43-512.03(1)(a). And the language of § 43-512.03(1)(a) at the time of the *Chambers* opinion corresponds to the current version of § 43-512.03(1)(a).

[6,7] Although the State in this case did not specify under which subsection of § 43-512.03 it was proceeding, because it was seeking to enforce an already existing child support order, the State's action falls under the authority of § 43-512.03(1)(c), and not § 43-512.03(1)(a). Subsection (1)(c) provides in relevant part that the county attorney shall enforce child support orders "by other civil actions or administrative actions, citing the defendant for contempt, or filing a criminal complaint." Since a contempt citation presumes the violation of a previous court order, the entirety of § 43-512.03 cannot be read to exclude cases where previous court orders already exist. See *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016) (appellate court will try to avoid, if possible, statutory construction that would lead to absurd result). Accordingly, we read the holdings on subject matter jurisdiction in *State ex rel. Gaddis v. Gaddis, supra*, and *State ex rel. Cammarata v. Chambers, supra*, to apply only to what is currently § 43-512.03(1)(a), which pertains to the State's authority to initiate child support actions under that specific section of the statute, and not to the State's authority to bring child support enforcement actions under § 43-512.03(1)(c).

[8,9] Subject matter jurisdiction deals with a court's ability to hear a case; it is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. See *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005). In *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 675, 782 N.W.2d 848, 862 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012), the Nebraska Supreme Court said:

We have stated that a court that has jurisdiction to issue an order also has the power to enforce it. A court can issue orders that are necessary to carry its judgment or decree into effect. Nebraska courts, through their inherent judicial power, have the authority to do all things reasonably necessary for the proper administration of justice. And this authority exists apart from any statutory grant of authority. We have recently explained that the power to punish for contempt is incident to every judicial tribunal. It is derived from a court's constitutional power, without any expressed statutory aid, and is inherent in all courts of record.

Because the district court had the power to enforce its previous child support order, it had subject matter jurisdiction over this contempt action.

*Payment History.*

Douglas argues the district court erred when it admitted the DHHS payment history report into evidence as a "valid bill of costs for child support without anyone attesting to, or signing off on, it." Brief for appellant at 8. He references several provisions of the Uniform Commercial Code in support of his argument. However, the Uniform Commercial Code, which governs commercial and business transactions, is not applicable here.

[10] The child support payment history received into evidence complied with the necessary requirements. Pursuant to § 42-358(3), "[t]he Title IV-D Division of [DHHS] shall maintain support order payment records pursuant to section 43-3342.01 . . . ." Neb. Rev. Stat. § 43-3342.01 (Reissue 2016) provides:

(1) The responsibilities of the State Disbursement Unit shall include the following:

(a) Receipt of payments, except payments made pursuant to subdivisions (1)(a) and (1)(b) of section 42-369, and disbursements of such payments to obligees, the department, and the agencies of other states;

(b) Accurate identification of payments;

(c) Prompt disbursement of the obligee's share of any payments;

(d) Furnishing to any obligor or obligee, upon request, timely information on the current status of support order payments; and

(e) One location for employers to send income withholding payments.

(2) The Title IV-D Division shall maintain records of payments for all cases in which support order payments are made to the central office of the State Disbursement Unit using the statewide automated data processing and retrieval system. . . .

(3) *A true copy of the record of payments, balances, and arrearages maintained by the Title IV-D Division is prima facie evidence, without further proof or foundation*, of the balance of any amount of support order payments that are in arrears and of all payments made and disbursed to the person or agency to whom the support order payment is to be made. Such evidence *shall be considered to be satisfactorily authenticated, shall be admitted as prima facie evidence of the transactions shown in such evidence, and is rebuttable only by a specific evidentiary showing to the contrary*.

(4) A copy of support payment records maintained by the Title IV-D Division shall be considered to be a true copy of the record when certified by a person designated by the division pursuant to the rules and regulations adopted and promulgated pursuant to this section.

(Emphasis supplied.)

In the instant case, the payment history report received into evidence as exhibit 1 contained a "Certification" that it was a "true copy of the official record of support order payments, balances, and arrearages maintained by the IV-D division, pursuant to Neb Rev Stat §43-3342.01." It was electronically signed by a "CSE Payment Records Specialist" on behalf of

"Byron Van Patten, IV-D Director." Accordingly, the payment history report was properly authenticated and the district court did not err when it received the report into evidence.

### Modification.

Douglas also assigns, but does not specifically argue, that the district court was without jurisdiction to modify an existing child support order. However, the case did not involve the modification of an existing child support order; rather, it was a contempt action to enforce an existing child support order. And as previously discussed, the district court has jurisdiction over such actions.

### "Willful" Contempt.

[11] Douglas argues that the district court erred when it found him to be in willful contempt despite his impoverished status. Pursuant to § 42-358(3), "[a] rebuttable presumption of contempt shall be established if a prima facie showing is made that the court-ordered child or spousal support is delinquent." The State put into evidence a certified copy of Douglas' child support payment history showing that as of November 9, 2015, he had an outstanding child support balance of $4,112.94 (delinquent, arrears, and interest). Because the State made a prima facie showing that Douglas' child support obligation was delinquent, there was a rebuttable presumption of contempt. The burden then shifted to Douglas to produce evidence rebutting the statutory presumption.

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such an act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). "'Willful' means the violation was committed intentionally, with knowledge that the act violated the court order." *Id*. at 376, 808 N.W.2d at 873. We consider now whether Douglas introduced evidence sufficient to overcome the presumption that he was in willful contempt of the child support order.

Douglas provided limited factual information to the district court regarding why he should not be found in contempt. For his opening statement, Douglas said he wanted to "make a statement as to [his] indigence . . . and [his] inability to pay at this time, but, other than that, [he would] let the prosecution go forward." Later, after the State produced the payment history record establishing a prima facie case of contempt, Douglas was asked if he had anything to rebut the evidence that he was behind in his child support payments. Douglas told the district court:

> I am indigent. I've got, publicly declared, two poverty affidavits on the court record. I'm currently in the appellate court with a juvenile case. The custody of my daughter is up in the air. It — the juvenile case has been — my brief has just been accepted.

> I'm also — currently, the District Court is going to receive an appeal in which I was denied a substantial right during a special proceeding. I appealed that, also, Your Honor. And, you know, so my poverty affidavits in itself speak for themselves. I — I — I cannot pay right now. That's just — it's that simple. I'm indigent. I am under — I have nothing.

At the hearing, the court made a verbal finding that, based on the evidence, Douglas was in willful contempt of court. Douglas responded by saying, "How could I be in willful contempt when it's beyond my control? I am — I'm in a poverty status. I have no money. I have tools to my name. I have no property, tools."

While Douglas claimed to have poverty affidavits on "record" in other court cases, he provided no evidence of such to the district court in this case. He did not give testimony regarding his ability to work, his employment status, or any information regarding his income, or lack thereof, or why he had made no child support payments for an entire year. He simply stated that he could not pay, but provided no reason why, other than he has "nothing." We note that the show cause

order entered on May 12, 2015, ordered Douglas to bring income tax returns for the past 3 years and his last three wage statements; he failed to do so. In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court reviews the trial court's factual findings for clear error and its determinations of contempt for an abuse of discretion. By finding Douglas in willful contempt of court, the district court implicitly found that Douglas had not provided sufficient evidence to rebut the presumption of contempt. See *Hossaini v. Vaelizadeh, supra*. We agree and affirm the district court's finding that Douglas was in willful contempt of court.

## CONCLUSION

For the reasons stated above, we affirm the decision of the district court.

Affirmed.